## FLEMING v. SOUTHERN RAILWAY COMPANY.

### (Filed December 9, 1902.)

1. RAILROADS—*Master and Servant—Negligence—Automatic Couplers—Personal Injuries.*

 The failure to equip a locomotive with an automatic coupler in general use is negligence, as much as a failure to so equip a car.

2. RAILROADS—*Master and Servant—Negligence—Automatic Couplers—Personal Injuries—Rules.*

 Where a rule of a railroad company forbids an employee from making couplings of cars otherwise than by a stick, such rule does not literally prohibit the employee from going between an engine and car to couple them, if it is practically impossible to make the coupling with a stick.

3. RAILROADS—*Master and Servant—Contributory Negligence—Automatic Couplers.*

 The failure of a railroad company to equip its cars and engines with modern self-coupling devices is a continuing negligence, and there can be no contributory negligence by the employee which will discharge the liability of the master.

4. INSTRUCTIONS—*Releases—Acts (Private) 1897, Chap. 56—New Trial.*

 Where the language of an instruction is too broad, and is calculated, if not intended, to mislead, and may have misled the jury, a new trial will be granted.

ACTION by D. E. Fleming against the Southern Railway Company, heard by Judge *A. L. Coble* and a jury, at November Term, 1901, of the Superior Court of IREDELL County. From a judgment for the plaintiff, the defendant appealed.

*Long & Nicholson,* for the plaintiff.
*L. C. Caldwell,* for the defendant.

MONTGOMERY, J. The plaintiff, an employee of defend-

ant company, alleged in his complaint that he was ordered by a conductor of one of the defendant's trains to make a coupling of an engine and a freight car, and in obeying the order was hurt through the negligence of the defendant, without fault of his own.

In describing the manner in which he was injured, he further alleged: "That the coupler on the engine was what was usually called a draw-bar, and of the weight of about 120 to 125 pounds, and of the length of about five or six feet; that one end of the draw-bar was fastened to the engine, and the other end reached toward the front of the pilot, and, in order to couple with this instrument, it was necessary to raise the same about three feet and attach the end thereof to the coupler of the car to which it was desired to make the coupling; that it was impossible to make the coupling without the brakeman getting on the pilot in order to lift the draw-bar and make the attachment; that on this occasion the plaintiff undertook to make this coupling under the direction of his superior, whose orders he was required to obey; and that this draw-bar was one of the old fashioned methods by which couplings were made." And as to the particular form of the defendant's negligence, the plaintiff further alleged that his injuries were caused by the negligence of the defendant, in that it failed to furnish for said engine and for the cars then and there in use upon its track at the said place, safe and suitable machinery, equipments and devices, for the purpose of safely connecting, coupling and operating the said engine and cars upon its said track, and with modern self-coupling devices as required by law, and such failure continued up to the time of the injury received by plaintiff as aforesaid; on the contrary, said engine and cars were provided with unsafe, defective, unwieldy and unsuitable machinery, appliances and devices, not adapted to, nor answering the purpose of safe use for which they were intended, as the defendant well knew.

The defendant, in its answer, denied that it was negligent in the manner alleged by the plaintiff, and averred that the plaintiff was hurt by the careless and negligent manner in which he made the coupling.

And for a further defense, the defendant averred that after the plaintiff was hurt, he, for a valuable consideration, paid to him by the defendant, executed and delivered to the defendant a full release and discharge of all claims he had against the defendant on account of the injuries complained of in the complaint; and the defendant pleaded the release in bar and estoppel of the action.

The errors assigned by the defendant were, first, because the Court admitted incompetent and improper evidence (pointed out in the case on appeal); second, because the Court refused to give certain special instructions asked by the defendant, and in giving certain special instructions asked by the plaintiff; and, third, because the Court failed, as defendant contended, to state in a plain and correct manner the evidence given in the cause, and to declare and explain the law arising thereon, embracing an explanation of its nature, purpose and bearing, etc., to prevent misapprehension by inadvertence and mistake.

The first of the defendant's prayers for instructions was, in substance, that his Honor should tell the jury that if they should find that the car to which the engine was attempted to be coupled by the plaintiff, at the time of his injury, was equipped with an automatic coupler, such as that required by law, and that the engineer was capable and operated his engine with care and caution, then the defendant would not be liable, because not negligent, and the first issue should be answered "No." It was properly refused. There was evidence tending to show that automatic couplers were in general use and on the engines of the defendant company, and that the engine which the plaintiff undertook to link, or couple,

with the freight car was the only engine of the defendant on that road that was not equipped with a self-coupler at that time.   It was also in evidence that engines necessarily have to be coupled with cars, and it seems to us to be as essential that the same kind of a device in the way of a coupler should be attached to an engine as is attached to a car, the end and aim of the law being the protection, as far as possible, of the life and limb of persons in railroad employment.

In the defendant's second prayer for instructions, it desired the jury to be charged to answer the first issue "No," because this Court, in the case of *Greenlee v. Ry. Co.,* 122 N. C., 977, 41 L. R. A., 399, 65 Am. St. Rep., 734, had declared May, 1898, as "the time" for the equipment of freight cars with automatic couplers.   It was stated in the prayer that the plaintiff was hurt in October, 1897.   It is not a fact that such time (May, 1898) was fixed as the beginning of the liability of railroad companies for not equipping their cars with automatic couplers.

The plaintiff was injured in December, 1897; Greenlee was hurt in that same year, 1897, but before the plaintiff was, and Greenlee's case was heard in this Court in 1898.

The third prayer was in these words: "If the jury should find from the evidence that the rules of the company forbade any employee to make coupling by going between cars, and should find that the plaintiff knew of such rule, and that he signed a paper positively prohibiting an employee from coupling by going between the cars, or any other way, except with a stick, and the plaintiff, in violation of the same, exposed himself to danger and went between the car and the engine for the purpose of making the coupling, he would be guilty of contributory negligence, and the jury would answer the second issue 'Yes.' "   His Honor properly refused to instruct as requested.   The rule, taken literally, does not forbid the plaintiff from going between an *engine* and a car

for the purpose of making the coupling. The prohibition is against coupling or uncoupling *cars* with a stick. The links and pins that connect cars are easily manipulated by a stick in the hands of a brakeman, who can stand away and from between the cars and make the coupling. That is a very different matter from coupling an engine and a car, where the coupler provided for the engine is a bar of iron five or six feet long and weighing from 100 to 125 pounds, lying across the pilot, and to be raised two or three feet in order to make the coupling. The plaintiff, as a witness in his own behalf, testified that he made the coupling in the usual way, and that in order to get it (the draw-bar) in position, you have to raise it up, one end of it; that you can not raise it up without getting on the pilot; that you have to get on the pilot to raise it up, and he did it in the usual way that brakemen do it. The conductor testified that it was plaintiff's duty to couple the engine and the car.

James Dumphy, a witness for the defendant, and in the defendant's employment as yard master at Asheville, in 1898, said the usual way was to couple engine to car, and the rules of the company required it, and that when the draw-bar was down, witness always did it with his hands. He said further that it would have been very hard to raise draw-bar with a stick—that it would take a very powerful man to raise bar with a stick; it would be more difficult to make the coupling. That rule of the company, as we have seen, did not literally prohibit the plaintiff from going in between an engine and a car to couple them, and neither does it when given a fair and just construction require the plaintiff to use a stick for such coupling. And further, from the evidence in reference to the size and length and weight of the draw-bar, and force necessary to raise it, it must have been the company's intention that such coupling should be made with the hand and not with a stick.

The fourth, fifth, sixth and seventh prayers for instructions concerned the alleged contributory negligence in making the coupling, and ought not to have been given.

It has been decided by this Court that "the failure of a railroad company to equip its cars with automatic couplers is a continuing negligence, and where the negligence of the defendant is a continuing negligence, as the failure to furnish safe appliances in general use, when the use of such appliances would have prevented the possibility of the injury, there can be no contributory negligence which will discharge the master's liability." *Troxler v. Ry. Co.*, 124 N. C., 189; 70 Am. St. Rep., 580; 44 L. R. A., 313. There can then be no contributory negligence of the plaintiff available to the defendant as a defence in this action, because the plaintiff attempted to make the coupling in discharge of his duty, and because the continuing negligence of the defendant up to the moment of the injury was subsequent to the palintiff's negligence, if there was any, and is the proximate cause of the injury.

The eight, ninth and tenth of defendant's prayers for instruction will be disposed of when we come to consider the eighth and ninth of the plaintiff's prayers for instruction.

The plaintiff's first prayer was in these words: "First. If you believe the evidence, the draw-bar which the defendant had upon its freight engine was not a self-coupling device. The failure of a railroad company to equip its freight cars with modern self-coupling devices is negligence *per se*, continuing up to the time of an injury received by an employee in coupling cars by hand, whether such employee contributed to such injury by his own negligence or not." There was no error in the giving of the instruction by his Honor. The defendant's exception to it no doubt was founded upon the holding by his Honor that it was negligence in the defendant not to equip the engine with an automatic coupler.

The second of the plaintiff's prayers was not given, and the third was in these words: "If you are satisfied, therefore, by the greater weight of the evidence that the plaintiff went in to make the coupling when the defendant had not furnished the self-coupling device, and received the injury, it is your duty to answer the first issue 'Yes,' and also your duty to answer the second issue 'No.'" It is plain that the exception to that instruction was based on the same view that the defendant took of the first prayer, that is, that it was not negligence in the defendant to fail to equip its *engine* with a self-coupler, and therefore that the jury should have been allowed to pass upon the question of the contributory negligence of the plaintiff. We are quite sure that his Honor did not mean to say, or to intimate, that if the plaintiff's injury grew out of a matter not connected with the coupler, the defendant would be liable simply because the defendant was guilty of negligence in not having equipped its engine with a self-coupler. He had already told the jury in his general charge that the plaintiff must not only show that he was injured as was alleged in the complaint, but that they must find that the injury was due to the fact that the engine was not equipped with an automatic coupler.

Neither can we think that the jury was misled by the language of the instruction. We think the clear meaning of that instruction, when taken with the other part of the charge on that point, is that the plaintiff was in duty bound to go in between the engine and the car to make the coupling, and that because of a failure of the company to furnish a self-coupling device, he could not be held as contributing to his own injury, if he was hurt while between the engine and car performing his duty. If the plaintiff had been injured while engaged in making the coupling under a state of facts as testified to by himself, he would not have been debarred of the right to maintain his action, even if he had been injured

by an act of negligence on the part of the defendant, not con-
nected with the defective coupler, or even by a lawful act of
the defendant's agent or employee, because the continuing
negligence of the defendant in not properly equipping the
engine with a self-coupler must be concurrent with the act
which produced the injury, and the one would be as much a
proximate cause of the injury as the other. Of course, after
the coupling had been made and completed, if the plaintiff
had then committed some negligent act, as by standing too
near the track as to be hurt by the moving engine or car,
then the negligence of the defendant in not properly equip-
ping the engine would not be the proximate cause of the in-
jury, and the plaintiff's negligence would have been a matter
for consideration.

The bare fact that a railway company has failed to properly
equip its cars with automatic couplers, and is therefore neg-
ligent, does not of itself make the company liable for an in-
jury to an employee. The injury must be connected with,
and proceed from, that particular negligence, and the em-
ployee must be in the discharge of his duty.

For the reason that this case has been under an *advisari*
for a term, and for other reasons satisfactory to us, we have,
notwithstanding our conclusion to order a new trial for an
error-pointed out, discussed and decided the matters raised in
the case on appeal, with the exception of his Honor's in-
struction upon the matters connected with the defence of
the release and discharge set up by the defendant in its an-
swer, and the defendant's prayers for instruction eight, nine
and ten, in relation thereto. And what we shall now say
concerning those matters will be merely incidental, and only
in connection with the defendant's exceptions to the eighth
and ninth of the plaintiff's special requests for instructions.

His Honor, after having charged the jury upon the matter
of the release and discharge, and refusing certain special re-

quests of the defendant for instructions, gave the 8th and 9th, asked by the plaintiff, as follows: "8. A rule of the railroad company, agreed to by the plaintiff, may be waived or abrogated for the company by the conductor making an order contrary to such rule, when it was the duty of the plaintiff to obey such order." "If you find by the greater weight of evidence in this case that the plaintiff signed the paper 'B,' and agreed not to couple cars except with a stick; if you further find that the conductor ordered him to make the coupling, you are instructed that the conductor had the power to waive or abrogate the said contract."

"9. The Legislature has enacted that any contract or agreement, express or implied, made by any employee of said company, to waive the benefit of an action which he may have against the company for injuries, shall be null and void. 'And it seems,' says the Supreme Court, 'that the Legislature intended to put an end to such intention by saying, in the first section of the act, that he shall have a right of action for injuries caused by such defective machinery, and providing in the second section that he can not waive this right by contract, express or implied.' "

We need not discuss the correctness of the eighth special instruction of the plaintiff which his Honor gave, for the reason that what we have said above in discussing the refusal of his Honor to give the third prayer requested by the defendant, makes it unnecessary. (It may be interesting to observe, however, that there is a marked difference between the language of the agreement made by the plaintiff in this case not to go between the cars for the purpose of coupling them and the language of the agreement on the same subject in the case of *Mason v. Railroad*, 114 N. C., 719.)

We think there was substantial error in the giving of the instruction asked by the plaintiff above set forth (numbered 9); the language was too broad, and was calculated (not to

say intended) to and may have misled the jury, and directed their minds to the release and discharge set up by the defendant in its answer.

The language of section 2 of the Fellow Servant Act, Chap. 56, Private Laws 1897, does not read as it is quoted in the instruction. The language is, "That any contract or agreement, expressed or implied, made by any employee of said company to waive the benefit of the aforesaid section, shall be null and void." It does not read that any contract, etc., made by an employee of said company to waive the benefit of an action *which he may have* against the company for injuries shall be null and void. The first section of said act in its application to employees who have been injured by defects in the machinery, ways or appliances of railroad companies, provides that such persons shall be entitled to maintain an action against such company; and section 2 of the same act provides that the injured employee's contract to waive the benefit of the first section shall be null and void. That is, upon entering the service of a railroad company, or afterwards before an injury might happen, the injured employee will not be bound, looking to the future, by any contract he may have made with the company waiving the right to maintain an action for his injury. The words "which he may have against the company for injuries," as they appear in the instruction, have a double aspect; they look both to the future and to the past, and the jury may have applied that language to the release and discharge which the defendant had procured after the injury. And the last section of the instruction (number 9), a quotation from the opinion of this Court in the case of *Coley v. Railroad*, 128 N. C., 534, we can see might have had a most injurious effect upon the defendant's rights. It could have had no application to the matters embraced in the eighth instruction requested by the plaintiff, which his Honor gave. The whole instruction might reasonably have

been considered by the jury as a statement made to them by his Honor that there could be no release and discharge, even for a valuable consideration, by an employee who had been injured by the defective machinery of a railroad company.

As we have said, we do not discuss in this opinion the matters relating to the release and discharge and the alleged fraudulent character of the paper writing.

For the error pointed out, there must be a

New Trial.