## ELMORE v. SEABOARD AIR LINE RAILWAY CO.

(Filed December 18, 1902.)

NEGLIGENCE —*Contributory Negligence* —*Couplers* —*Defective* —
    *Railroads.*

> In an action by a brakeman for damages for personal injuries,
> the injury being caused, not by a defective coupler, but be-
> cause the plaintiff negligently used his foot to push the
> bumper in place, while doing the coupling, he can not re-
> cover.

CLARK and DOUGLAS, J.J., dissenting.

PETITION to rehear this case, reported in 130 N. C., 506.

*Day & Bell, J. B. Batchelor, T. B. Womack,* and *Shepherd
& Shepherd,* for the petitioner.
*Allen & Dortch,* and *Isaac F. Dortch,* in opposition.

MONTGOMERY, J.    The plaintiff's own testimony upon the
question of the defendant's negligence is not consistent, it
seems to us, with the allegation of the complaint; and it also
seems to us that his Honor, in the charge, had some difficulty
in understanding what the contention of the plaintiff was
as to the proximate cause of the plaintiff's hurt.    In the
complaint, as it was first drawn and filed, the plaintiff alleged
that the defendant was, in September, 1900, operating a train
of cars on its line of railway between Wilmington and Ham-
let, with the couplers on the train of cars out of repair and
defective "to such an extent that the cars in said train, and
other cars belonging to the defendant at Clarkton, which
were to be made a part of said train, could not be coupled
without going between said cars; that on that date there
were four cars upon the side track at Clarkton, and as the
train approached that place it was uncoupled, leaving the
cab on the main track below the beginning of the side track,

the balance of the cars being carried along the main track to a place above the other end of the side track." The remaining portion of the complaint was as follows: "(3) That plaintiff was ordered by the conductor in charge of said train, whose orders the plaintiff was bound to obey, to remain near the cars on the main track below said side track, for the purpose of coupling those cars to the cars upon the side track, and the said cars upon the side track were put in motion by defendant, and were negligently permitted to roll very rapidly, by means of what is known as 'kicking' cars along said side track, and on the main track, and negligently and violently to come in contact with the cars on the main track, where the plaintiff was. (4) That at the said time and place the defendant negligently permitted the coupler attached to the cars on said side track to remain out of repair, so that the lip was closed, which made it necessary for plaintiff to go between said cars in order to couple the same. (5) That on said day, at said town of Clarkton, while the plaintiff was endeavoring to perform the order of said conductor, and while he was coupling said cars, he was greatly injured and damaged by reason of the negligence of defendant, as herein set forth, and by other acts of negligence, his foot was crushed to such an extent that his big toe and a part of his foot had to be amputated; he suffered great physical and mental pain and anguish, and was compelled to incur great expense, and was disabled from work, and has been permanently injured, to his great damage $10,000."

. The complaint was afterwards amended, the amendment consisting of the allegation that the conductor well knew that the order to couple the cars could not be performed without going between them, on account of the condition of the cars; and in the further allegation that the plaintiff was in no fault on his part.

It is to be seen from the complaint, then, that the allega-

tion as to defective couplers on the train, before it was un-coupled at the siding, was a general allegation, bearing no more particularly on the cab than on any of the freight cars which composed the train; while it appears from the fourth allegation of the complaint that the coupler attached to the car on the side track, which car was to be shoved back and coupled with the cab, was the particular car equipped with the defective coupler. And yet, on the trial, that particular car and coupler disappeared practically from the case, and the plaintiff's whole testimony was in respect to an alleged defect in the coupler on the cab.

It is stated in the case on appeal that all of the evidence was sent up, and, after a careful perusal of it, it seems evident from the plaintiff's testimony (and that without being confused by the cross-examination), that he was uncertain where to fix the negligence of the defendant, *i. e.,* whether his hurt was caused from trying to remedy the defective coupler on the cab, or that on the freight car, or both. By the amendment of the complaint, he alleged in a general way that the conductor knew that the coupling could not be made without going between the cars, on account of the condition of the cars. He did not allege that the conductor knew that there was any defect in the *coupler* on the cab, or in that on the particular freight car which was to be attached to the cab. On his examination as a witness, however, he said that Captain Byrd, the conductor, knew that the coupler on the cab was out of fix to the extent that the link or chain was gone—missing.

The coupler was a standard automatic coupler, such an one as is required by law to be attached to cars, and the only defect in the one on the cab was the missing link; and, as we have seen, the plaintiff said that the conductor knew that link was missing when he ordered the plaintiff to go to the cab and make the coupling when the cars on the siding should

be pushed back against it. The only effect of the missing link was that it rendered it necessary, in order to produce a coupling of the cars, that the lip of the coupler should be opened by the hand; and, as the plaintiff testified that he was ordered to make the coupling, and that the conductor knew that the link was missing, let us assume that he was authorized under the order to go to the car and open the lip. He did that, and when it was done, the coupler was in as good condition for coupling as if the link had not been missing in the first place. That is to be emphasized, for there is no evidence, not even in the plaintiff's own testimony, to the effect that the coupler had any other defect about it. We know he said that the bumper was turned towards him and was not in the center, and that he had to kick it to get it into the center to make the coupling with the approaching freight car; but all that is mere opinion evidence. The fact still remained that there was no other defect except the missing link.

This Court, in *Greenlee v. Railroad,* 122 N. C., 977; 41 L. R. A., 399; decided that it was the duty of railroad companies in this State to equip their cars with self-couplers, and, by act of Congress, all cars that are operated in interstate commerce are required to be so equipped; and it would seem to be almost bordering on the absurd for this Court to say that we can have no common knowledge of what a self-coupler is, or that we will receive as evidence that a self-coupler is defective simply because the bumper is not exactly in the center. We know it must be to some extent movable, so as to adjust it to curves of the track, and no greater mobility was shown by the plaintiff than that.

When the plaintiff, therefore, had opened the lip of the coupler on the cab, in the manner described by himself, he had discharged the order which had been given him by the conductor. (The conductor testified that he gave him no such order, and that the coupler was in good condition.) But

the plaintiff said that after he had discharged his duty, that is, after he had opened the lip of the coupler, he looked up the side track and saw the cars coming rapidly, and noticed that the coupler on the cab was not in the centre, and, to carry out the order of the conductor to make the coupling, he kicked at the bumper on the cab to get it in the center, and his foot was instantly caught between the couplers on the two cars and badly crushed.

We are not disposed to modify in the least the decision made in *Greenlee v. Railroad,* 122 N. C., 977; 41 L. R. A., 399; in which we decided that the railroad companies in this State should equip both their passenger and freight cars with self-couplers; and we are of the opinion that a neglectful failure to keep the couplers in proper condition and repair would be as culpable as if the cars had never been so equipped.

But as we have said in the case before us, the plaintiff was not hurt by the failure of the company to have a self-coupler on the car, or for a failure to keep it in repair. The plaintiff, when he opened the lip of the coupler, had restored it to its full usefulness, and in his kicking the bumper afterwards, when he saw the freight cars rapidly approaching him, and, indeed, so near to him as to be right upon him—for his foot was caught before he could get it down—he violated a rule of the company which he knew of, and which rule put the blame on himself. That he contributed to his own injury is too clear to admit of doubt, from his own testimony. According to the plaintiff's evidence, the order was given by the conductor, not upon a certain emergency without the opportunity of reflection, and obedience was a choice of two dangers.

The petition to rehear is allowed, and there must be a New Trial.

(Petition Allowed.)

FURCHES, C. J., concurring. I did not hear this case argued. The first I knew of it was in conference when I was told that the Court was evenly divided, and the case was stated to me. As I understand from this statement, the point of difference was as to whether the case fell under the decisions of Greenlee and Troxler, as the road had provided itself with automatic couplers, when I said I thought it did, and gave my vote in favor of the plaintiff, and the opinion was in that way based on Greenlee and Troxler. And I am still of the opinion I then expressed, that if the defendant had allowed its coupler to remain broken four or five months without repairing the breach, it was the same in effect as if it had not supplied itself with the automatic coupler. And in concurring in the opinion of the Court, it must not be understood that I do not sustain Greenlee and Troxler, and the other opinions cited for the plaintiff sustaining the doctrine announced in those cases, for I do.

But being applied to for a rehearing, I examined the case more thoroughly than I had done, in connection with the model of two cars with automatic couplers, and came to the conclusion that the plaintiff's injury was *not caused* by the defect in the coupler, but was one of those unfortunate accidents that always have happened, and always will happen, to those engaged in such dangerous work as railroading. It would be hard for me to describe this coupler to one who has not seen and examined one. But it consists of what is called "knucks" on each end of the car, which opens and shuts, something like a man's hand; and to effect the coupling, one or both of these must be open when the impact of the cars takes place, and the jar caused by this impact causes the hands or knucks to close. And the bolt spoken of is a small key or pin which falls when the knucks are closed, and prevents them from opening until this key or pin is raised. The wire spoken of as being broken attaches to this pin at one

end, and a crank at the other end. This pin can only be
raised by the hand, when this chain is broken. But raising
the pin with the chain and crank, or with the hand, does not
open the knucks—this can only be done with the hand, and
necessitates the party opening them to go between the cars,
whether the pin is raised with the chain and crank or with
the hand.

In this case, it appears from the evidence that the plaintiff
had raised the pin with his hand and was out of danger, and
would not have been hurt, but for the fact that he discovered,
on the approach of the car which was to cause the impact, and
which was to be coupled with the caboose, that the draw-
head to which the automatic coupler was attached was not
in the center of the car, and he kicked it to put it in the
center so as to strike the draw-head of the caboose, and in
doing this his foot was caught and he was injured. The plain-
tiff testified: "I took my fingers to pull up the draw pin to
open the lip of the coupler, and when I had found that the
bumper on the draw head was towards me, and I saw it was
not in the center, I looked at the other cars and saw that the
bumper on them was not open, but was closed. If they had
been open, I would have opened the lip and stood outside,
and it would have made its own coupling. I saw how the
situation was, and I had to push my foot down and push this
bumper in the center." In order to allow for the curves in
the road, it is necessary to allow the draw heads or "bump-
ers," as they seem to be called by the plaintiff, to have a small
lateral play. And when they are uncoupled on a curve, they
are sometimes left standing out of the center. This can not
be prevented. But it is utterly *impossible for a man to raise
this pin with his foot by kicking, or otherwise.* And while
I agree to the doctrine in the Greenlee case and in the Troxler
case, *as I understand them,* I can not agree that they apply to
the facts in this case. I agree that the defendant was guilty

of negligence in allowing this chain to remain out of repair for so long a time. But this does not entitle the plaintiff to recover, unless it caused the injury. Negligence alone does not give a right of action. The negligence complained of must be the *cause* of the injury. I never supposed that it would be contended that the cases of Greenlee and Troxler would entitle an employee of a railroad company to recover damages for any injury he might receive from the company while in its employment, whether the defective coupler had anything to do with the injury or not. It seems to me that it might as well be held that if the plaintiff had been lying on top of the car asleep, and the jar of the impact had caused him to fall off and break his leg, he might recover because the coupler was out of fix, as to hold that the plaintiff can recover for the injury in this case, when the defective coupler had nothing at all to do with the injury.

I am compelled to treat this matter coolly in the discharge of my duty as I understand it, without any effort to create sensation or alarm, and without conflicting with the cases of Greenlee and Troxler. In my opinion, the petition ought to be allowed.

CLARK, J., dissenting. This is a petition to rehear the decision in this case, 130 N. C., 506. No fact is shown to have been overlooked, nor any direct authority, and upon examination of the briefs on the former trial it will be seen that the petition simply presents the same points for re-argument. In *Dupree v. Ins. Co.,* 93 N. C., 239, Smith, C. J., quoting Chief Justice Pearson in *Watson v. Dodd,* 72 N. C., 240, says: "No case ought to be reheard upon a petition to rehear, unless it was decided hastily and some material point was overlooked, or some direct authority was not called to the attention of the Court." This has been often quoted with approval, among other instances by Furches, J., in *Capehart v. Burrus,* 124 N. C., at page 50.

The amended complaint alleges that "The defendant was operating a train of cars" at the time and place of the injury to the plaintiff, on which then, "and for a long time prior thereto, it negligently permitted the couplers to be out of repair and defective, to such an extent that the cars in said train, and other cars belonging to the defendant at Clarkton, which were to be made part of said train, could not be coupled without going between the cars." Is not this a clear allegation of negligence, and of a violation of the U. S. Act of 1893? The complaint further alleges that the train being uncoupled, and a part left below the beginning of the switch, and a part above it (both on the main line), "the plaintiff was ordered by the conductor in charge of said train, whose orders the plaintiff was bound to obey, to remain near the cars on the main track below said side track, for the purpose of coupling those cars to the cars upon the side track, which order the said conductor well knew could not be performed without going between said cars, on account of the condition of the cars, and the said cars were negligently permitted to roll very rapidly by means of what is known as 'kicking cars' along said side track and on to the main track, and negligently and violently came in contact with cars where plaintiff was"; that by reason of the defendant having "negligenly permitted the coupler attached to the cars on said side track to remain out of repair," the lip was closed, "which made it necessary for the plaintiff to go between said cars in order to couple the same," and that "while the plaintiff was endeavoring to perform the order of said conductor, and while coupling said cars, and without fault on his part, he was greatly injured and damaged by reason of the negligence of the defendant, as herein set forth," etc. Here, the allegation is explicit of negligence in permitting couplers to be and remain out of repair, both on the train on the main line and on cars on the side track, which were kicked back, and that they

could not be coupled without going in between the cars; also, negligence in violently kicking them back, and in the conductor ordering the plaintiff to make the connection, "which order the conductor well knew could not be performed without going between said cars," on account of the defective couplers.    There was evidence tending to prove each and every allegation above stated, and the jury, which, under the Constitution and laws is guaranteed to every litigant, no matter how humble, as the sole tribunal which may determine issues of fact, has sustained the charges, and the jury were unanimous, as the law requires of the triers of fact.    And the parties, in order to secure triers of fact to which neither side could have any legal objection, had been allowed such challenges as were proper, for there is no exception on that ground.    Had there been, notwithstanding, any ground to believe that the verdict was against the weight of the evidence, or to suspect that justice had not been done for any other reason, the trial Judge, who heard the evidence and knew all the incidents of the trial, had full authority to set the verdict aside.    *Bird v. Bradburn,* at this term.    His refusal to do so can not be reviewed by us.    We, who did not hear or see the witnesses, can not possibly be more competent than the jury and the trial Judge to determine, from the imperfect transmittal of the evidence on paper, without tone or emphasis, as to the weight to be given to the respective parts thereof.

There was evidence that "the coupler had been out of fix three months; that the conductor knew it; that the link was gone; that *with that link gone, the cars will not couple to save your life without using some means to open the thing;* that in the condition that coupler was in, *it was not possible to couple without taking hold with hand or foot"*—all these sentences are quoted from the evidence in the record.    And further, it is stated in the evidence sent up: "The coupler was broken.

It was an automatic coupler. The link that pulls up the draw pin was out, *so you could not use the coupler without the use of the foot or something"*; and further, "you can not couple if the draw pin won't work." Even the superintendent of the defendant says: "If the statement made by the young man is true, and the chains were gone, it would be necessary for him to go in and lift it up." It has been suggested that the absence of the link was not a very material fact; but the evidence by which a jury must reach its conclusions, according to the weight they may give it, contains this: "Question. Does that link have anything to do with the coupling? Answer: Yes, sir. You can not couple if the draw pin won't work." Again: "Question: Why did you not have time to go and see to them while they were standing still? Answer: The cars were rolling when the Captain instructed me to go couple them." The conductor says: "The cars started and had cleared the switch when I started down to the depot"; and the plaintiff's evidence is: "Question: Where were you when the cars commenced moving? Answer: I was standing there by Captain Byrd, and he said, 'Son, you run up and couple those cars while I run up to the warehouse and get orders.'" To order the plaintiff to go in to make the coupling, especially when the cars were moving, was of itself negligence, even before automatic couplers were required (*Mason v. R. Co.,* 111 N. C., 482; 18 L. R. A., 845; 32 Am. St. Rep., 814; (1892), and it is doubly so now, when, as here, there is evidence in the record that the conductor knew that the coupler was out of order, and well knew that the coupling in that condition could not be made without going in between the cars.

Aside from the negligence of the conductor in giving such order, the permitting the couplers to remain out of order more than three months was itself a violation of the Federal statute (2 March, 1893, 27 Stat., 531), and negligence. In

a remarkably well considered case, in the U. S. Circuit Court for Iowa, *Voelker v. R. Co.,* 116 Fed. Rep., 867 (decided just after the opinion in this case was filed in June last), Shiras, J., holds that "A carrier, by permitting couplers, originally sufficient, to become worn out and inoperative, is within the prohibition of the act of Congress, 2 March, 1893, against using cars in interstate commerce not equipped with couplers, coupling automatically." Also, he says that the company was liable where, the coupler being out of order, the employee "undertook to fix it so the coupling might be made, and while so engaged he was caught between the cars and received injuries causing his death." This is "on all fours," except that here the negligence of the defendant crippled their man but did not kill him. In that case, as in this, the defendant urged that it was error to permit the jury to determine that the "condition of the coupler was the proximate cause of the injury." Judge Shiras overruled the objection and makes the following pertinent ruling, without which the statute would become a delusion and cease to be any protection to the hundreds of thousands of laboring men whose lives and limbs were for so many long years exposed to needless peril for the lack of such statute. He says:

*"The statutory requirement with respect to equipping cars with automatic couplers was enacted in order to protect railway employees, as far as possible, from the risks incurred when engaged in coupling and uncoupling cars. If a railway uses in its business cars which do not conform to the statutory requirements, either because they never were equipped with automatic couplers, or because the company, through negligence, has permitted the couplers, originally sufficient, to become worn out and inoperative, then the company is certainly not performing the duty and obligation imposed upon it by the statute, and is clearly therefore chargeable with negligence in thus using an improperly equipped car; and the*

company is bound to know that if it calls upon one of its employees to make a coupling with a coupler so defective and inoperative, that it will not couple by impact, and that to make the coupling the employee must subject himself to all the risks and dangers that inhered in the old and dangerous link-and-pin method of coupling, it is subjecting such employee to the very risk and danger which it is the purpose of the statute to protect him against, so far as that is reasonably possible. Subjecting an employee to risk to life and limb by calling upon him to use appliances which have become defective anl inoperative through the failure to use proper care on the part of the master is certainly negligence, which will become actionable if injury results therefrom to the employee, and liability therefor can not be avoided by the plea that if the company was thus guilty of actionable negligence in this particular, it can not be held responsible therefor because it was guilty of another act of negligence which aided in causing the accident. This accident happened because Voelker, in the performance of his duty, was called upon to place his person in a position where he MIGHT be caught between the cars he was expected to couple together. He was required to place himself in this dangerous position because of the negligent failure of the company to have upon the car a coupler in proper and operative condition, and certainly this negligent failure of the company was the proximate cause of the accident."

This is practically the same ruling which this was the pioneer Court to make in *Greenlee v. Railroad,* 122 N. C., 977; 41 L. R. A., 399 (26 May, 1898), and which has been reiterated in *Troxler v. Railroad,* 124 N. C., 189; 44 L. R. A., 313; 10 Am. St. Rep., 580; and so many cases since, down to and including *Fleming v. Railroad,* at this term. Those cases practically settle also the issue of contributory negligence, for as the injury would not have happened, and

the plaintiff would not have had to go between the cars at all, if the couplers had been in proper condition, it is immaterial whether he went in negligently or not, for the negligence of the defendant in not having couplers, and in good working order, was the proximate cause. *Voelker v. R. Co., supra.*

In *Harden v. R. Co.,* 129 N. C., 355; 55 L. R. A., 784; 85 Am. St. Rep., 747; the Court affirmed the Judge below, who had charged (quoting from Greenlee's case) as follows: "If you find that the freight train was not fully provided with modern self-acting couplers, and that the plaintiff *would not have been injured had the cars been so provided,* you will find the first issue 'Yes,' and the second issue 'No.' " This ruling has just been reiterated in *Fleming v. R. Co.,* at this term.

There was some conflicting evidence, but that was the province of the jury. The plaintiff's testimony above referred to is that if the coupler had been in good condition, he would not have had to go in between the cars nor to kick the bumper, and he is corroborated by the superintendent of the defendant company, who says if the coupler was in the condition the plaintiff testified, it was "necessary for him to go in and lift it up." Whether his manner of "lifting it up" was negligent or not, is immaterial in view of our uniform decisions from Greenlee's case down to *Fleming v. R. Co.,* at this term, that the proximate cause, the *causa causans,* is the negligence of the railroad company in not complying with the law which requires it shall have automatic coupling apparatus, which will not require an employee to go in between the cars at all.

The plaintiff could not assume a risk which the law forbids the railroad company to impose upon him. Besides, assumption of risk does not apply to railway employees in this State, since the act which is printed as chapter 56, Private Laws 1897. *Coley v. R. Co.,* 128 N. C., 534, and other cases sustaining it, which are collected and reaffirmed in *Mott*

*v. R. Co.,* at this term.   Indeed, on the evidence here, assumption of risk would not apply to any employee.  *Lloyd v. Hanes,* 126 N. C., 359; *Smith v. Baker,* App. Cas. (1891), 325, cited and approved; *Williams v. Birmingham Co.,* 2 B. D. (1899), 338.

Humanity, justice, and the soundest principles of public policy alike require that the act of Congress, 2 March, 1893, and the principles laid down by Judge Shiras in the above cited case of *Voelker v. Railroad,* and by the uniform rulings of this Court from Greenlee's case down to Fleming's, should be sternly upheld and rigidly enforced.   In the report of the Interstate Commission for 1902, it is said that in 1893, when the act requiring automatic car couplers were enacted, there were 433 men killed and 11,277 wounded in coupling cars in this country, and that, by reason of the gradual enforcement of that law, the number of killed and wounded in car coupling for the year ending 30 June, 1902, aggregating a little over 2,000—a diminution of more than 9,500 in the number of men killed and wounded annually, though the number of railway employees has increased 200,000 in the same period of time, which, at the same ratio, would have caused 15,000 men to have been killed and wounded annually in coupling cars, if there had been no enforced use of automatic couplers by the law.   The Commission says the decrease of accidents in that particular (car coupling) has been 68 per cent fewer killed, and 81 per cent fewer injured than in 1893 (without adding in the further loss which would have occurred among the additional 200,000 employees), which decrease they attribute to this legislation and its enforcement by the Courts.   They point out that in no other particular have injuries to passengers or employees been diminished, but that in fact there is a decided increase.

If the law is effectively enforced, the annual loss still existing of 2,000 killed and wounded in manual coupling will

entirely disappear. But if, notwithstanding the law requires automatic car couplers, they can be left off or (which is the same thing) allowed to remain out of repair, and when an employee is ordered in to make the coupling, which has become non-automatic, these powerful corporations can contest before the jury whether the railroad company is not relieved from all responsibility because the employee might have done the act illegally required of him in a more prudent manner, and carry that contest up from Court to Court, then the provisions of a law, which was enacted from the protection of this vast body of useful and industrious men, is a nullity— construed away by the Courts—and they are handed over to the tender mercy of a power which saw with indifference the number of killed and wounded in coupling cars mount up, year after year, till the figures reached the annual total of near 12,000. In that steady increase there was no halt until the force of a humane and irresistable public opinion compelled the use of automatic couplers, though their life and limb saving properties had been well known to railroad managers for a quarter of a century. *The evidence is that this injury to the plaintiff could not possibly have happened if this law had been complied with by the defendant.*

This Court, which was the pioneer to lay down, independent of legislative enactment, the requirement of justice that such appliances should be used, should not be the first to construe away the efficacy of what is now a Federal statute, applicable to the defendant and all other railroads throughout the Union engaged in interstate commerce.

DOUGLAS, J., dissenting. Dissenting in toto from the opinion of the Court, except in so far as it approves the Greenlee and Troxler cases, both in its view of the law as applicable to this case and its assumption of fact, I shall briefly notice but one or two of its apparent errors. The

opinion seems rather to forestall dissent by assenting "that it would seem almost to border on the absurd for this Court to say that we can have no common knowledge of what a self-coupler is." In spite of this dictum, I venture to assert that neither this Court nor the average citizen has any common knowledge of the mechanical constitution of an automatic or self-coupler. The only fact that would seem to be of common knowledge is that a coupler that will not couple itself is not a self-coupler; and that a coupler which has to be pulled and pushed into place is not automatic. A model was exhibited to this Court, which was not used below, and was not proved to be similar to the coupler on the cars. This was a mere illustration of the general working of automatic couplers, and was not proof of any fact in controversy. There are, in fact, different kinds of self-couplers, those most generally seen being the Janney and M. C. B. (Master Car Builders). I do not know the difference, but believe that the latter includes any coupler approved by the association. Many of these patent couplers are interchangeable, but still there is some difference.

Again, the opinion characterizes certain testimony of the plaintiff as "mere opinion evidence," when, in fact, it appears to me a plain statement of existing facts:—that the bumper was not in the center and had to be kicked into the center to make it couple. This fact does not seem to have been denied by anyone. Again, the opinion says: "The fact still remained that there was no other defect except the missing link." This may or may not be true. If the coupler was negligently arranged, so as unnecessarily to allow so much lateral play as to destroy its character as a self-coupler, this would be an evident defect. Again, the opinion says that "When he had opened the lip of the coupler, * * * he had discharged the order which had been given him by the conductor." I do not think so. His order was to couple the

cars; and if it was necessary to kick the coupler on the incoming car, a method which is shown by the testimony to be frequently resorted to by railroad men, then he was still carrying out his orders. But all these are findings of fact, which I respectfully submit are not within the province of this Court.

Again, the opinion says: "That he contributed to his own injury is too clear to admit of doubt, from his own testimony." This gratuitous assertion of fact should be left to the jury.

This Court is not authorized to set aside the verdict of a jury simply because a majority of its members would not concur therein were they jurors. In any event, if this Court undertakes to perform the functions of a jury in finding the facts, it would seem that it should, at least, do so by a unanimous verdict.