## ELMORE v. SEABOARD AIR LINE RAILWAY CO.

(Filed June 10, 1903).

1. NEGLIGENCE—*Contributory Negligence—Couplers—Railroads—Master and Servant.*

In an action by a brakeman for damages for personal injuries, there can be no recovery where the injury was caused, not by a defective coupler, but because plaintiff negligently used his foot to push the bumper in place.

2. NEGLIGENCE—*Contributory Negligence.*

The failure of a railroad company to have self-coupling devices on their cars is a continuing negligence; and, to an action for an injury resulting therefrom, contributory negligence is not a defense.

3. NEGLIGENCE—*Contributory Negligence—Master and Servant—Couplers.*

The fact that an employee remains in the service of a railroad company, knowing that its cars are not equipped with self-couplers, does not excuse the railroad from liability to such employee, if injured while coupling its cars by hand.

4. NEGLIGENCE—*Automatic Couplers—Railroads.*

The failure on the part of a railroad company to keep automatic couplers in proper condition and repair is negligence, as much as if the cars had never been equipped with such couplers.

5. NEGLIGENCE—*Contributory Negligence—Master and Servant.*

In an action for a servant's injuries, a charge that if a coupler was out of order, so that it was necessary to go between the cars to make the coupling, and plaintiff was directed by the conductor, whom he was under duty to obey, to couple the cars, and he was compelled to go between the cars to couple, and it was dangerous, and more probable that it could not be safely done than that it could, plaintiff would be guilty of contributory negligence, was sufficiently favorable to defendant.

6. NEGLIGENCE—*Contributory Negligence—Master and Servant.*

In an action for a servant's injuries, an instruction that if plaintiff knew that the coupler was out of order, and that it was too dangerous to go between the cars to couple, and that plaintiff used his foot to make the coupling, and that by reason of his position

Vol. 132—55

ELMORE v. RAILWAY CO.

he acted foolishly and without prudence with reference to the character of the work, and that this act was carelessness, the chances of safety being less in favor of him than against him, he would be guilty of contributory negligence, even if defendant knew of the defective condition of the coupler; was sufficiently favorable to the defendant.

MONTGOMERY, J., dissenting.

PETITION to rehear this case, reported in 131 N. C., 569. Petition allowed.

*I. F. Dortch, W. T. Dortch* and *W. C. Monroe,* for the petitioner.

*Day & Bell, Shepherd & Shepherd* and *T. B. Womack,* in opposition.

CONNOR, J.   This cause is before us upon a second petition to rehear.   We have given the case a very careful consideration, recognizing the well-settled principle by which this court has always been governed that a petition to rehear will not be entertained unless it appears that some material point was overlooked or some controlling authority escaped the attention of the court, or some other weighty consideration requires it.   *Hannon v. Grizzard,* 99 N. C., 161; *Fisher v. Mining Co.,* 97 N. C., 95.

This cause was heard at the February Term, 1902, upon an appeal from the judgment of the Superior Court of Wayne County in favor of the plaintiff.   The judgment was affirmed by a majority of the court, two of the justices dissenting. Clark, J., said:   "This case is simply a repetition of *Greenlee v. R. R.,* 122 N. C., 977; 41 L. R. A., 399; 65 Am. St. Rep., 734; *Troxler v. R. R.,* 124 N. C., 191; 44 L. R. A., 313; 70 Am. St. Rep., 580, and of several cases affirming the doctrine therein laid down.   It was in evidence that the defendant's cars were equipped with automatic couplers, but when plaintiff was injured in making a coupling, there was

evidence that the automatic coupler had been out of repair five months or more to the knowledge of the defendant." The opinion concludes: "It is the duty of the defendant to use automatic couplers, and if, on failure so to do, injury occurs to an employee, which would not have happened if there had been a coupler, this is continuing negligence on the part of the employer, which cuts off the defense of contributory negligence, such failure being the *causa causans*. If the automatic coupler was out of repair for a length of time reasonably sufficient to have it repaired and this was not done, it was the same thing as failure to have the automatic coupler on that car." Cook, J., dissenting upon the ground that, in his opinion, the court should have instructed the jury that, upon the whole evidence, they should answer the second issue, to-wit, "Did the plaintiff by his own negligence contribute to his injury," in the affirmative. Mr. Justice Montgomery concurred in the dissenting opinion.

The cause was reheard at the August Term, 1902, 131 N. C., 569, and the opinion of the majority of the court was adverse to the plaintiff; Clark, J., and Douglas, J., writing dissenting opinions.

We are now called upon to re-examine the record in the light of the several opinions and dissenting opinions heretofore filed. The syllabus of the report of the case at the last term states the conclusion arrived at by the majority of the court as follows: "In an action by a brakeman for damages for personal injuries, the injury-being caused, not by a defective coupler, but because the plaintiff negligently used his foot to push the bumper in place, while doing the coupling, he can not recover." We unhesitatingly adopt this as a correct proposition of law. The fact put in issue by the pleadings and in respect to which testimony was introduced by the plaintiff and defendant, is whether there was a defective coupler, and whether the plaintiff was injured by reason of

such defect, and whether he was at the time in the discharge of his duty, that is, whether he was ordered by the conductor to make the coupling. Of course, if he was not injured by a defective coupler, or if he was not in the discharge of his duty, or if he recklessly or carelessly went between the cars, he could not recover. This brings us to an examination of the testimony and his Honor's charge.

The allegation is, that the plaintiff, being in the employment of the defendant as a flagman on September 17th, 1900, was ordered by the conductor in charge of said train, whose orders plaintiff was bound to obey, to remain near the cars on the main track, below the side track, for the purpose of coupling the cars to the cars upon the side track, which order the said conductor well knew could not be performed without going between such cars on account of the condition of the coupler, and the said cars upon the side track were put in motion by the defendant, and were negligently permitted to roll very rapidly, by means of what is known as "kicking cars," along said side track and on the main track, and while in the discharge of such duty was injured by reason of the defective condition of the coupler.

These allegations are denied. It was also denied that it was any part of the plaintiff's duty to couple the cars, or that he was ordered to do so by the conductor, and it is alleged that his act in doing so was voluntary and officious, and that he negligently and carelessly undertook to use his foot to kick over the draw-head instead of his hands, and that in so doing his foot slipped and was caught between the draw-heads and was crushed, and that he was injured by his own gross negligence. Upon these allegations appropriate issues were submitted to the jury. Without reviewing the testimony, it is sufficient to say, and it is not denied, that there was testimony in behalf of the plaintiff to the effect that the cars were supplied with automatic couplers, but that, at the time of the

injury, they were not in proper condition; that they had been in a defective condition for several months, and that the conductor knew of it. There was also evidence that the plaintiff knew of the defective condition of the couplers. There was evidence that plaintiff was ordered by the conductor to make the coupling, and that it was the duty of the conductor to report persons engaged in the service under him for disobedience of orders, and that upon such report they would be discharged. There was testimony in behalf of the defendant contradicting much of this testimony. The plaintiff was asked the question: "If the coupler had been in perfect condition, would you have been able to couple without putting your foot between there?" He answered: "Yes, sir; I would have been able to fix it without my foot." Upon cross-examination he was asked: "Why did you go between those cars when you knew that it was against the rules of the company to do so, and when you were ordered to do a 'dangerous thing by the conductor?" To which he answered: "I obeyed him, sir." He was asked: "Did you know that he could not discharge you?" He answered: "I knew if he reported me that he could have me discharged if I disobeyed him." He was asked the question upon cross-examination: "If the link had been in perfect condition would you have had to kick it?" To which he answered: "No, sir." "Did you not know that it was carelessness to use your foot to do such a thing?" "I had seen other people use their feet. I was instructed to couple and I tried to do so." He was asked if he knew the rule prohibiting employees from going in between the cars while they are coupled to the engine, or being so coupled, for the purpose of coupling or uncoupling cars, or to set pins or links, or for any other purpose while the train is in motion, and providing that one who did so was acting at his own risk and against the rules of the company, and would be subject to discharge from the service.

He answered, that he had never read it and had never heard it read.   He had heard of it.   That he violated the rule because he was instructed by the conductor.   That he knew that the coupler was out of repair.   Heard the conductor say so.   There was much other testimony from the plaintiff along the same line.   The defendant introduced the conductor and several other witnesses, who contradicted the plaintiff in many material respects.   The testimony was conflicting and contradictory.   Upon the close of the evidence, defendant moved the court to non-suit the plaintiff, which motion was refused.   The court charged the jury as follows:   "It was the duty of the defendant to furnish the train of cars spoken of in evidence with the automatic couplers, and it is admitted that they had automatic couplers, and it was further its duty to inspect from time to time these couplers, for the purpose of seeing if they were in repair, and if they failed in this respect, and if said couplers became out of repair, it was guilty of negligence (but if the jury shall find from the evidence that the part of the coupler on the end of the caboose car was not quite in line with the corresponding part on the end of the car coming toward it and to which it was to be coupled, and if the plaintiff to get it in line kicked the part on the end of the caboose, and if the jury further find that the standard automatic coupler on said cars had some play in its socket, allowing it to move to the right and left on account of curves in the track, and that this was necessary for the movement of the train, and if the jury shall find that this was the proper way for such couplers to be, and if the jury shall further find that this was the natural result from its proper construction and use and that the coupler was not otherwise out of repair, then the defendant was not negligent in failing to provide these

couplers as prescribed by law.)   To this part of the charge enclosed in brackets the defendant excepted.

(If the jury further find from the evidence that the train of cars spoken of in evidence had automatic couplers, which would have made it unnecessary for the plaintiff coupling the cars to go between them and to use his hand or foot, and they further find that those couplers had become out of repair for such a length of time that the defendant knew or ought to have known that they were out of repair and for such a length of time that defendant could have had them repaired and that the defendant failed to repair said couplers, and if the jury further find that the plaintiff would not have been injured but for the condition of the couplers and that in the condition in which the couplers were that it was necessary in order to couple to use the hand or foot, and they further find that the plaintiff was a flagman on said train and under the direction of the conductor and that the conductor directed him to couple the cars and in doing so he was injured, and if the jury further find that the plaintiff would not have been injured but for the condition of the couplers then it would be the duty of the jury to answer the first issue 'Yes.')   To so much of the charge enclosed in brackets, the defendant excepted.

(If the jury find from the evidence that the train of cars had automatic couplers which would have made it unnecessary for the plaintiff coupling the cars to go between them, and it is admitted that they had standard automatic couplers, and if they further find from the evidence that these couplers were in repair, so that it was unnecessary for the plaintiff coupling the cars to go between them, and that the plaintiff was a flagman on said train and under the direction of the conductor and the conductor directed him to couple the cars, and in so doing, he did go between them unnecessarily and was injured, then it is the duty of the jury to answer the first

issue 'No.')    To so much of charge in brackets the defendant excepted.

If you answer the first issue 'No' you need go no further, but return your verdict, but if you answer the first issue 'Yes,' then you proceed to answer the second issue.    The second issue, you will understand, is this:    'Did the plaintiff by his own negligence, contribute to the injury complained of ?'

(Now, coming to the consideration of the second issue, if you should reach that issue, If the jury find from the evidence that the couplers were out of repair and had been for such a length of time that the defendant knew, or by the exercise of reasonable care should have known that they were out of repair, and for such a length of time that the defendant by the exercise of reasonable diligence could have had them repaired, and that the plaintiff coupled the cars under the direction of the conductor, and that it was his duty to obey the conductor, and that he would not have been injured but for the condition of the couplers, then it would be the duty of the jury to answer the second issue 'No.')    To that part of the charge in brackets the defendant excepted.

(And if the jury further find from the evidence that the plaintiff undertook to couple the cars under the direction of the conductor and that it was his duty to obey the conductor, and but for the condition of the couplers he would not have been injured, this would be a continuing negligence on the part of the defendant, and would continue up to the time of the injury and would be a negligence subsequent to any negligence of the plaintiff if such existed, and the negligence of the plaintiff under these circumstances would not be the proximate cause of the injury and would not be contributory negligence, and in that event it would be the duty of the jury to answer the second issue 'No.')    To that part of the charge enclosed in brackets the defendant excepted.

(But this instruction is given subject to an instruction which I will give you further on, and this will be so although they may further find from the evidence that the plaintiff undertook to couple the cars in disobedience of the rule of the company, and although they may further find from the evidence that the coupling was dangerous, and that he knew it was dangerous, and although they may believe that he was negligent in coupling the cars and did not exercise due care on his part. This is given subject to an instruction I will now give you, which is the one alluded to in the previous instruction.) To that part of the charge enclosed in brackets the defendant excepted.

In case of the use of couplers by railroads they are required to use improved couplers to prevent going between the cars to couple, and automatic couplers are such, and it is admitted that the defendant did use automatic couplers at the time of the plaintiff's injury, but it is contended that the one in use at the time of the injury was out of repair and that it was known to be so by the defendant or had been so for such a length of time that the defendant should have known it, and this is denied by the defendant, so that is a matter of contention.

(In this case if the jury find by the greater weight of evidence that this particular coupler was out of order, so that it was necessary to go between the cars to couple, and the plaintiff was directed by the conductor to couple the cars, and that it was his duty to obey the conductor and that he was compelled to go between the cars to couple, and that if the jury shall further find that it was dangerous and that the probability that it could not safely be done, was greater against his chances of doing it safely than in favor of it, then it would be a case of contributory negligence and the answer to the second issue would be yes.) To that part of the charge enclosed in brackets the defendant excepted.

(This is the instruction I said I would give you to which a previous instruction was subject. If the jury find from the evidence that the coupler was out of order and that the plaintiff knew it was such and that it was too dangerous under the rule I have just given to go between the cars to couple, and if the jury find further that the plaintiff stood on the ground and used his foot to make the coupling, and that by reason of his position he acted foolishly, recklessly and without prudence with reference to the character of the work, and that this act was carelessness and that the chances of his safety were less in favor of him than against him, then it would be contributory negligence on his part, and even if the defendant knew of the defective condition of the coupling, and in that event it would be the duty of the jury to answer the second issue yes.) To that part of the charge enclosed in brackets the defendant excepted.

(If the plaintiff acted recklessly and without care, if the jury have previously found the defendant guilty of negligence, the plaintiff could not recover. Now it is important for you to get that distinction under the matters in controversy. If you find that the plaintiff was injured by reason of the negligence of the defendant in not having these couplers in proper condition, but when (if you answer the first issue yes) and in considering the second issue you should find that the plaintiff acting under the direction of the conductor and being subject to his orders, if you find he was so, went in between the cars to couple them, when the conditions were such that it was so dangerous that the chances were greater against his safety than in favor of it, then it would be such recklessness as would make him guilty of contributory negligence, or if after he went in there he acted with such carelessness as made his chances greater against his safety than in his favor, he would be guilty of contributory negligence, and in case of either of these findings it would be

the duty of the jury to answer the second issue 'Yes.' Now, if you answer the second issue, then you would proceed no further with your verdict.) To that part of the charge enclosed in brackets the defendant excepted.

This court has decided in *Greenlee v. Railroad,* 122 N. C., 977, that the failure to have self-coupling devices on their cars was negligence *per se;* that it was a continuing negligence and the question of contributory negligence did not arise when an employee was injured by reason of the failure to have automatic couplers in proper condition; that the fact that plaintiff remained in the service of the railroad company knowing that its freight cars were not equipped with self couplers does not excuse the railroad from liability to such employee if injured while coupling its cars by hand. The doctrine of assumption of risk has no application where the law requires the use of new appliances to secure the safety of employees. This doctrine is approved in *Troxler v. Railroad,* 122 N. C., 902.

Mr. Justice Montgomery in the opinion in this case, 131 N. C., 573, says: "We are not disposed to modify in the least the decision made in *Greenlee v. Railroad,* 122 N. C., 977, in which we decided that the railroad companies in this State should equip both their passenger and freight cars with self couplers, and we are of the opinion that a neglectful failure to keep the couplers in proper condition and repair would be as culpable as if the cars had never been so equipped." In *Fleming v. Railroad,* 131 N. C., 476, Mr. Justice Montgomery says: "It has been decided by this court that 'the failure of a railroad company to equip its cars with automatic couplers is a continuing negligence, and where the negligence of the defendant is a continuing negligence, as the failure to furnish safe appliances in general use, when the use of such appliances would have prevented the possibility of the injury, there can be no contributory negligence

which will discharge the master's liability.' *Troxler v. R. Co.,* 124 N. C., 189. There can be no contributory negligence of the plaintiff available to the defendant as a defense in this action, because the plaintiff attempted to make the coupling in discharge of his duty and because the continuing negligence of the defendant up to the moment of the injury was subsequent to the plaintiff's negligence, if there was any, and is the proximate cause of the injury."

Chief Justice Furches, in his opinion, says: "While I agree to the doctrine in the Greenlee and in the Troxler cases, as I understand them, I can not agree that they apply to the facts in this case."

We must accept the doctrine laid down by this court in the Greenlee and Troxler cases as the law of this case. His Honor clearly followed the law, as thus laid down, in charging the jury in regard to the first issue and could not in the light of those cases have charged the jury as a matter of law to answer the second issue "Yes." He did charge the jury that if they found by the greater weight of evidence that this particular coupler was out of order, so that it was necessary to go between the cars to couple, and the plaintiff was directed by the conductor to couple the cars and that it was his duty to obey the conductor, and that he was compelled to go between the cars to couple, and that it was dangerous and the probability that it could not be safely done was greater against the chances of doing it safely than in favor of it, then it would be a case of contributory negligence, and the answer to the second issue would be "Yes." The defendant excepted to this charge. It seems to us that it was as favorable as the defendant could have asked for or was entitled to. His Honor further charged the jury upon the second issue that if the plaintiff knew that the coupler was out of order and that it was too dangerous to go between the cars to couple, and if the jury further find that plaintiff stood on the ground

and used his foot to make the coupling and that by reason of his position he acted foolishly, recklessly and without prudence with reference to the character of the work, and that this act was carelessness and that the chances of his safety were less in favor of him than against him, then it would be contributory negligence on his part, and even if the defendant knew of the defective condition of the coupler, and in that event it would be the duty of the jury to answer the second issue yes. The defendant excepted to this instruction. We think it as favorable as could have been asked by the defendant. His Honor repeated to the jury that if the plaintiff acted recklessly and without care plaintiff could not recover.

We have examined the instructions with care and have held the case under advisement for a long time. We are unable to see any reversible error in his Honor's instruction. The contentions were clearly and fairly stated to the jury and we think his Honor's charge upon the whole correct. Whether the verdict of the jury is in accordance with the weight of the testimony in view of the many contradictions therein we have not considered and it would not be proper for us to do so.

The case of *Voelker v. Chicago, M. & St. P. Ry. Co.,* 116 Fed. Rep., 867, is very similar to the facts in this case, the court saying: "The statutory requirement with respect to equipping cars with automatic couplers (referring to the Act of Congress) was enacted in order to protect railway employees, as far as possible, from the risk incurred when engaged in coupling and uncoupling cars. If a railway uses in its business cars which do not conform to the statutory requirements, either because they never were equipped with automatic couplers, or because the company, through negligence has permitted the couplers, originally sufficient, to become worn out and inoperative, then the company is certainly not performing the duty and obligation imposed upon it by the statute, and is clearly, therefore, chargeable with negli-

gence in thus using an improperly equipped car; and the company is bound to know that if it calls upon one of its employees to make a coupling with a coupler so defective and inoperative that it will not couple by impact, and that, to make the coupling, the employee must subject himself to all the risk and dangers that inhered in the old and dangerous link and pin method of coupling, it is subjecting such employee to the very risk and danger which it is the purpose of the statute to protect him against, so far as that is reasonably possible. Subjecting an employee to risk to life and limb by calling upon him to use appliances which have become defective and inoperative through the failure to use proper care on part of the master is certainly negligence which will become actionable if injury results therefrom to the employee."

This court has held in *Mason v. Railroad,* 111 N. C., 482; 18 L. R. A., 845; 32 Am. St. Rep., 814, that an employee "when acting under the order of the conductor, but contrary to a rule of the railroad company to which he has assented, was injured in coupling defective cars, of which he had no notice until it was too late to escape, it was error to withdraw the case from the jury on the ground that plaintiff, upon such facts, could not recover."

The relation existing between the conductor and brakeman with the relative rights and duties, and in respect to giving and obeying orders is clearly set forth by Mr. Justice Field in *Chicago & Milwaukee R. Co. v. Ross,* 112 U. S., 391, and the subject is fully and ably discussed by Mr. Justice Avery in *Mason v. Railroad,* 111 N. C., 482.

Much of the argument in this cause before us was directed to the contention that the accident could not have occurred in the manner testified to by the plaintiff. The decision of this question was peculiarly the province of the jury and its verdict read in the light of the testimony and the instructions given, establish the contention made by the plaintiff. The

only portion of this record which we can review is the instruction of his Honor. This we have done carefully and find no reversible error therein. We are of the opinion that the judgment of this court at the February Term, 1902, should be affirmed. This will be certified to the Superior Court of Wayne County to the end that the judgment below be *affirmed.*

Petition Allowed.

MONTGOMERY, J., dissenting. I can not concur in the disposition of the petition to rehear this case. The evidence in the case was stated correctly, as I think, in the opinion of the court, 131 N. C., 569; and my views of the law, as in that opinion written, have undergone no change. It would serve no good purpose to repeat here what was written in the reported case above referred to.