GEORGE R. TURNER, executor, *vs.* BOSTON & MAINE RAILROAD & another.

Suffolk.   January 13, 1893. — March 2, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Personal Injuries — Railroad — Licensee — Unblocked Frog — Negligence — Law and Fact — Evidence.*

An employee of a railroad corporation, who is engaged in delivering a car to another railroad corporation upon the latter's tracks in the regular course of business between the two corporations, is not a mere licensee.

If an employee of a railroad corporation is injured by having his foot caught in a frog in the track of another railroad corporation, while engaged in delivering a car to the latter upon its tracks in the regular course of business between the two corporations, it is a question for the jury, in an action against the last named corporation for the injury, whether the defendant was negligent in leaving the frog unblocked, there being evidence that the defendant had assumed the duty of blocking all the frogs, and keeping them blocked, for the safety of its own employees, as required by the St. of 1886, c. 120.

In an action against a railroad corporation for personal injuries occasioned to an employee of another railroad corporation, by having his foot caught in an unblocked frog in the track of the former corporation, while engaged in delivering a car to the latter upon its tracks in the regular course of business between the two corporations, it appeared that the frog was about twenty-eight feet distant from the end of a passenger station at a junction where the roads of the two corporations crossed each other. There was evidence from the section master in charge of the blocking of frogs at this place, from which it might be found that he had not noticed for three or four days whether the frog which

caused the accident was blocked or not; and other men under him were not called as witnesses upon this point. It was also contended, from the appearance and testimony of the section master, that he was not to be believed when he testified that he had blocked this frog shortly before the accident; and it was further argued that other frogs near by were also left unblocked. *Held*, that it was open to the plaintiff to contend that, if this frog had ever been blocked at all, it had not been in that condition recently before the accident; and if not, that it might be inferred that the defendant or its agents or servants knew or ought to have known the fact.

In an action against a railroad corporation for personal injuries occasioned to an employee of another railroad corporation, by having his foot caught in an unblocked frog in the track of the former corporation, while in the performance of his duties in delivering a car upon its tracks, a photograph taken the next morning after the accident, which occurred in the evening, showing the condition of other frogs near by, having been put in evidence without objection, is competent to be used to show that the other frogs were unblocked, the defendant's section master having testified, in substance, that he kept all the frogs blocked, including the one which caused the accident.

In an action against a railroad corporation for personal injuries occasioned to the plaintiff, resulting in his losing both legs below the knees, a physician testified, without objection, that he had recommended the plaintiff to go South or West for the recovery of his health; that it was necessary that a person should go from here with him; that he was in the incipient stages of consumption; and that, while his injuries would not directly produce this disease, they would produce a condition of body favorable to its development. He was then allowed, against objection, to testify as to the price for the services of such a trained nurse as would be competent to take care of the plaintiff. *Held*, that the defendant had no ground of exception.

TORT, against the Boston and Maine Railroad and the Fitchburg Railroad Company, for personal injuries occasioned to the plaintiff's testator, Frank H. Turner, while in the discharge of his duties as a brakeman in the employ of the Fitchburg Railroad Company, by having his foot caught in a frog in the tracks of the Boston and Maine Railroad. At the trial in the Superior Court, before *Fessenden*, J., the jury returned a verdict for the Fitchburg Railroad Company, and for the plaintiff as against the Boston and Maine Railroad; and the latter alleged exceptions, which appear in the opinion.

*T. Hunt & S. Lincoln*, for the defendants.

*R. M. Morse*, (*C. E. Hellier* with him,) for the plaintiff.

ALLEN, J. 1. The Boston and Maine Railroad contends that there was no evidence to warrant the jury in finding that the plaintiff's testator was rightfully upon its tracks, or, at most, that when there he had any other rights than those of a licensee. This view cannot be sustained. There was evidence tending

to show that it was customary for the Fitchburg Railroad Company to deliver cars to the Boston and Maine Railroad upon the track in question, in the usual course of business between the two railroad companies, and that, on the occasion of the accident, a car had been so delivered, but was not pushed quite far enough upon it.   It was proper for the Fitchburg Railroad Company to deliver the car in a suitable place on the track, even if it was not its duty to do so, and in doing so that company and its servants, of whom the plaintiff's testator was one, could not be considered as bare licensees.   They were engaged in making a proper delivery of the car in the regular course of the business of the two railroad companies, and the rules of law applicable to mere licensees do not apply to the plaintiff's testator.   *Plummer* v. *Dill*, 156 Mass. 426.   *Sawyer* v. *Rutland & Burlington Railroad*, 27 Vt. 370.   *Merrill* v. *Montpelier & Wells River Railroad*, 54 Vt. 200.   *Smith* v. *New York & Harlem Railroad*, 19 N. Y. 127.

2. The Boston and Maine Railroad further contends that there was no evidence of negligence on its part.   It was not in dispute that the frog was unblocked at the time of the accident.   It was also in evidence that the Boston and Maine Railroad had assumed the duty of blocking all the frogs and keeping them blocked, for the safety of its own employees.   The Boston and Maine Railroad contended that it owed no duty at all to the plaintiff in respect to the frog, and that he had no right to be on the track, either growing out of the customary mode of doing business or otherwise.   This view, as already said, cannot avail, because the plaintiff's testator did not stand as a bare licensee.   He therefore had a right to expect that some precaution for his safety should be taken.   If the Boston and Maine Railroad owed any duty at all to the plaintiff in this respect, no request was made to have the measure of this duty defined, and no exception was taken to the instructions which were given in respect to it.   We do not, however, see that the instructions which were given imposed too heavy a duty upon the Boston and Maine Railroad.   For the safety of its own employees, at least, by St. 1886, c. 120, § 1, it was made the duty of that road to " fill or block the frogs, switches, and guard rails on its track, with the exception of guard rails

on bridges, so as to prevent the feet of its employees from being caught therein." If leaving frogs unblocked was dangerous to employees of the Boston and Maine Railroad, it might be inferred that it was not safe for the plaintiff's testator. Courts may take notice of the standard of safety in respect to frogs which the Legislature has fixed. This statute, we are told by counsel in argument, was not before the jury, so that at the trial the Boston and Maine Railroad had the benefit of its exclusion. But in view of this statute, leaving the frog unblocked might be attended with danger to the plaintiff, and might therefore have some tendency to show negligence on the part of the Boston and Maine Railroad; and the cases cited from other jurisdictions, where it has been held that leaving frogs unblocked is no evidence of negligence, are not applicable here. Whether leaving a frog unblocked was or was not negligence was left to the jury, and the Boston and Maine Railroad had no right to a ruling, as matter of law, that it was not negligence.

3. The Boston and Maine Railroad further contends that there was no evidence that it, or its agents or servants, knew or ought to have known that the frog was unblocked. The facts relied on by the plaintiff in opposition to this view are as follows. The frog was about twenty-eight feet distant from the southerly end of the passenger station at Ayer Junction, where the main line of the Fitchburg Railroad is crossed by the Worcester and Nashua division of the Boston and Maine Railroad. There was evidence from the section master in charge of the blocking of frogs at this place, from which it might be argued and found by the jury that he had not noticed for three or four days whether this frog was blocked or not. Other men under him were not called as witnesses upon this point. It was also contended at the trial, from the appearance and testimony of the section master, that he was not to be believed when he testified that he had blocked this frog shortly before the accident; and it was further argued that other frogs near by were also left unblocked. It was open to the plaintiff to contend that, if this frog had ever been blocked at all, it had not been in that condition recently before the accident; and if not, that it might be inferred that the railroad or its agents or servants, knew or ought to have known the fact.

We do not find it stated that any distinct claim was made by the plaintiff on the ground that the Boston and Maine Railroad had failed to employ a suitable person to attend to the blocking of the frogs. If that point was in issue, it was proper for the jury. *Gilman* v. *Eastern Railroad*, 13 Allen, 433, 442, 443. *Keith* v. *New Haven & Northampton Co.* 140 Mass. 175. *Coffee* v. *New York, New Haven, & Hartford Railroad*, 155 Mass. 21.

4. There was no error in permitting the plaintiff's counsel to use the photograph for the purpose of showing the condition of other frogs near by, and of arguing from it that they also were unblocked. The accident to the plaintiff's testator happened in the evening. The photograph was taken the next morning, for the use of the Fitchburg Railroad Company, the co-defendant in the writ. It had been put in evidence generally, without objection. The first use made of it was in the cross-examination of one of the plaintiff's witnesses, who was asked to point out the place where Turner caught his foot, and he did so; and he was asked whether the photograph showed any frog on the other side of the car. While the section master was under cross-examination, the photograph was again used, and was put in evidence, and the attention of the jury was called to the position of the frogs at which the accident occurred. He was afterwards asked if he saw any indication of blocks at another point, but this question, being objected to, was waived. That is, as we understand it, the plaintiff's counsel did not care to press the question to the witness as to what he saw on the photograph. What the photograph showed could be seen by others, as well as by the witness. We do not understand that there was a waiver of a right to use the photograph for the purpose of showing that other frogs were unblocked; and the presiding justice could not so have understood, since he permitted it to be used for that purpose in the argument.

This use of the photograph was competent. It was taken just after the accident. There was no suggestion that there had been any change in the condition of the frogs in the mean while. No verification of the photograph had been required when it was put in evidence; indeed, it was first used either by the Boston and Maine Railroad or by its co-defendant, and it therefore stands as if it had been verified by the oath of the photographer. The section master had testified, amongst other

things, in chief, that prior to the accident he had received orders to block all the frogs and keep them blocked ; that he had blocked this particular frog about a week before the accident ; and that the Boston and Maine Railroad had supplied blocks to him ; and, on cross-examination, that he did not keep any account as to when he put blocks into frogs, that he put them in when needed, and that he was looking all the time for them. The jury might well understand this testimony to mean that he kept all the frogs blocked, as well as this particular frog. To meet this the plaintiff might show, by any competent evidence, that on the morning after the accident other frogs near by were unblocked, and might argue, in the absence of anything to show the contrary, that it was unlikely that several blocks would get displaced at once, and that the witness was mistaken in his testimony, and also that the evidence tended to show notice to the Boston and Maine Railroad or its officers. The photograph was competent evidence for the purpose of showing that the blocks were not there. *Blair* v. *Pelham*, 118 Mass. 420. *Randall* v. *Chase*, 133 Mass. 210. *Dyson* v. *New York & New England Railroad*, 57 Conn. 9, 24.

5. The remaining question is as to the admissibility of the evidence of the price for the services of a nurse. Dr. Whittier had testified, without objection, that he had recommended the plaintiff's testator to go South or West for the recovery of his health ; that it was necessary that a person should go from here with him ; that he was in the incipient stages of consumption ; and that, while his injuries would not directly produce this disease, they would produce a condition of body favorable to its development. He was then allowed, against objection, to testify that a fair price for the services of such trained nurse as would be competent to take care of such a case would be five dollars a day. The plaintiff's testator had lost by the accident both legs below the knees.

There could be but one action to recover damages for the injury, and therefore compensation for injury in the future, as well as in the past, must now be estimated and awarded. The question before us is not as to the rule to be applied when compensation for the future is to be made, but merely whether the evidence was competent. Elements of injury in the future which may be considered are the probable duration of life or of ill health, the diminished ability to labor, the loss of future

income, and the increase of future necessary and reasonable expenses. The reasonable cost of employing physicians and nurses, when such assistance has been necessary, is not open to objection. One physician or one nurse may charge more than another, and a jury may have to determine whether actual expenses have been reasonable, or what future expenses may be reasonable. But we see no ground on which a jury can be shut off from considering reasonable expenses incidental to attempts to effect a cure or to lessen the amount of the injury, and this was allowed in *Phillips* v. *Southwestern Railway*, 4 Q. B. D. 406, 408, *Phillips* v. *London & Southwestern Railway*, 5 Q. B. D. 78, 80, and 5 C. P. D. 280, 286, 287, 291, 292, in which cases the expenses of a journey to the South of France, by advice of medical attendants, were included as proper to be considered. Diminished ability to labor in the future may be shown. *Ballou* v. *Farnum*, 11 Allen, 73. *Howes* v. *Ashfield*, 99 Mass. 540. Loss of future income and probable duration of life were held to be proper in *Vicksburg & Meridian Railroad* v. *Putnam*, 118 U. S. 545. See also *Griswold* v. *New York Central & Hudson River Railroad*, 115 N. Y. 61. The increase of future expenses for physicians and nurses must rest upon the same ground. 4 Q. B. D. 408. *Feeney* v. *Long Island Railroad*, 116 N. Y. 375. *Hopkins* v. *Atlantic & St. Lawrence Railroad*, 36 N. H. 9.

It is now to be assumed that all proper instructions as to the measure of damages were given. The evidence was competent.                                    *Exceptions overruled.*