## JOHN A. GILLIN

### *vs.*

## THE PATTEN AND SHERMAN RAILROAD COMPANY.

### Aroostook.     Opinion June 2, 1899.

*Railroad. Negligence. Assumption of Risk. Blocking of Guard Rails. Stat. 1889, c. 216.*

The Stat. of 1889, ch. 216, requiring each railroad company to fill or block the frogs and guard rails on its track before January 1, 1890, does not require a railroad company, organized and constructing its railroad after that date, to fill or block its frogs and guard rails before allowing trains to be operated over its tracks. Such company is entitled to a reasonable time for compli- ance with that statute.

A brakeman who has worked as section man and brakeman for two years on a railroad where the frogs and guard rails were not filled or blocked must be presumed to appreciate the danger of getting his foot caught in such frogs and guard rails while stepping about and over them.

Such a brakeman having occasion to work as brakeman on the trains of his employer while passing over another railroad just constructed (since Jan'y 1, 1890,) cannot rightfully assume that the frogs and guard rails of the new railroad are filled or blocked, and hence dismiss all thought of them from his mind.

If such brakeman, under such circumstances, continues to work without requiring the frogs and guard rails to be filled or blocked, he must be held to have waived the right and to have assumed the risk of injury from stepping into them.

For such a brakeman, under such circumstances, to move about over frogs and switches while coupling and uncoupling cars, even in moving trains, without taking any thought of the frogs and guard rails or as to where he may be stepping, is negligence on his part contributing to the catching his foot in them.

ON MOTION BY DEFENDANT.

This was an action on the case to recover damages for personal injuries sustained by the plaintiff while employed as a brakeman upon the track of the defendant company at Sherman Junction, and in attempting to take certain cars there situate upon the line of the connecting railroad, the Bangor and Aroostook railroad. In attempting to do so and while uncoupling cars in the yard of the defendant company the plaintiff, as he alleged, having pulled the pin, the train still moving, undertook to step out from between the cars. In doing so, he caught his left foot in the flare of the main rail and a guard rail which were not filled or blocked, and received an injury to the foot which necessitated the amputation of a large portion of it.

The jury returned a verdict of $1,750 for the plaintiff and the defendant filed a general motion for a new trial.

The case appears in the opinion.

*Ira G. Hersey and P. H. Gillin,* for plaintiff.

Counsel argued that it was a question for the jury whether the unblocked and unfilled guard rail was in an unsafe condition; also whether plaintiff knew it and assumed the risk. *Turner* v. *Boston & Maine R. R.,* 158 Mass. 261.

The plaintiff testified that he had been only once before in the yard and junction of the defendant, and then at a point distant from that where the injury was received; and that although he

knew from general knowledge that there were guard rails within the yard, yet he knew nothing about their unblocked condition and had no knowledge of the danger. No evidence was produced by the defendant to show that plaintiff had any knowledge of the condition of this yard before or at the time he received his injury.

*Louis C. Stearns and P. P. Burleigh*, for defendant.

SITTING: PETERS, C. J., EMERY, WHITEHOUSE, WISWELL, SAVAGE, FOGLER, JJ.

EMERY, J. The defendant company, The Patten and Sherman R. R. Co., had recently built a short railroad from Patten to Sherman where it formed a connection with the Bangor and Aroostook railroad from Old Town to Caribou. To facilitate the work of transferring freight cars from one road to the other, the defendant company permitted the Bangor and Aroostook company to use its main track and side tracks at the junction for shifting or leaving cars. The plaintiff was in the employ of the Bangor and Aroostook company as head brakeman on a freight train between Old Town and Houlton passing Sherman junction. On November 24, 1896, when his train on its way from Old Town to Houlton arrived at Sherman junction, there was occasion to take into the train some freight cars standing on the tracks of the defendant company. The locomotive with some cars of the train, and under the plaintiff's direction, was switched over on these tracks and backed down over them to a point where it was desired to detach the end car to take in front of it some of the cars there standing. As the train was slowly backing, the plaintiff, without special order but in the line of his duty, stepped in between the end car and the one next to it to pull the coupling pin, and while at work on the pin he walked along with the train. Having pulled the pin, the train still moving, he undertook to step out from between the cars. In doing so he caught his left foot in the flare of the main rail and a guard rail and was injured by his foot being forced through between the two rails by the moving train behind. The guard rail was necessarily there as a protection to a switch at that place.

The plaintiff was aware that guard rails necessarily accompanied a switch and that switches accompanied side tracks. He testified that he did not take any notice of the switches or guard rails at this place, at the time of the accident, and did not think about them or their condition.

It may be assumed that, under the arrangement of the two railroad companies for the use of the tracks of the defendant company by the other as above described, the defendant company in relation to its tracks etc. owed the same duty to the employees, including the plaintiff, of the Bangor and Aroostook R. R. Co. that it owed to its own employees, or the same duty that the Bangor and Aroostook R. R. Co. owed to its employees. The plaintiff was more than a licensee. He was on the defendant company's tracks in the course of his employment under a business arrangement between the two companies. *Turner* v. *Boston & Maine R. R.* 158 Mass. 261; *Nugent* v. *B. C. & M. R. R. Co.*, 80 Maine, 62.

The only breach of duty alleged against the defendant company was the lack of blocking in the flare of the guard rail. The plaintiff claims that such blocking would have prevented the catching his foot in the rails as he stepped between them. The case therefore comes down to the usual questions between the railroad company and its employees:— (1) Whether the defendant company owed to the plaintiff the duty of thus blocking the guard rail:— and (2) Whether the plaintiff had given the defendant to understand that he waived the performance of that duty and assumed the risk of working there without such blocking. These two questions may be resolved into one, viz: Was the plaintiff by the law and the facts justified in assuming that the guard rail was blocked and therefore justified in omitting all care or thought about it as he says he did? If he was, he is entitled to recover. If not, he should have declined to unshackle cars at that place, or if consenting to do so, he should have been sufficiently careful not to step in the flare.

The plaintiff invokes the act of 1889, Ch. 216, which specifically provided that every corporation operating a railroad in this state "shall before January 1st, 1890, adjust, fill or block the frogs

and guard rails on its track, with the exception of guard rails on bridges, so as to prevent the feet of employees being caught therein." But this statute is not conclusive upon the defendant company because its road was not in operation in 1890. It was only just built and was still unfinished at the time of the injury to the plaintiff. The company was entitled to a reasonable time within which to comply with the requirement of the legislature. Indeed the legislature gave the old roads nearly a year. It could not have intended to give new roads no time at all. The statute alone, therefore, did not justify the plaintiff in assuming that the guard rail was blocked or filled.

In the absence of a controlling statute the relations between a railroad company and its employees, including brakemen, and their relative duties are the same as those between other employers and their employees. These have been defined and explained so lately that no iteration need be made here except very generally. The company must make its track and switches reasonably safe for the careful employee, so that the employee using ordinary care may avoid injury. The company however need not as toward its employees use the highest degree of care possible and have the newest or best appliances. Things must be as strong and safe as they appear to be. There must be no weakness or want of repair that ordinary care would have detected. There must be no hidden nor even obscure peril attending the use of the appliances. Where all these conditions exist, and the peril of use is an obvious one which the employee should have known and could avoid by care, there is in that respect no further duty on the company to him. Things being just what they seem, peril and all, if the employee requires more he should make that requirement known. If he does not, but makes use of the appliances as they are, he practically gives the company to understand that he is satisfied with them and will take the risk and rely upon his own carefulness to avoid injury. He cannot afterward, if injured by his own carelessness or by accident, effectually insist that the company took the risk.

The plaintiff was twenty-four years old and of average intel-

ligence.   He had worked two summers as section hand and laborer on the Canadian Pacific R. R.   He then went into the employ of the Bangor and Aroostook R. R. Co. in April, 1895, as brakeman. He first worked as brakeman on a ballast train, then in July, 1895, he was taken as brakeman on the through freight train from Old Town to Houlton.   At intervals afterward he worked as brakeman on other trains on the same road, but his regular work was on this freight train.   His railroad experience as section hand and brakeman was thus about two years.   As brakeman he was daily shifting switches and coupling and uncoupling cars near them.

It must be assumed, therefore, that he was familiar with the construction and operation of side-tracks and switches on that road. There is no claim that he was not.   It appears in the case that all the numerous switches, frogs and guard rails on the line from Old Town to Houlton were like those on the Patten and Sherman road at the junction, and unblocked.   The chance of injury from stepping between an unblocked guard rail and main rail while shackling or unshackling cars in a moving train is perfectly obvious at a glance, and must have been obvious to him.   It would be derogatory to his mental capacity to suggest that he did not know it, or appreciate it.   If he had been asked during his employment whether there was any danger in such an operation he would undoubtedly have answered that there was,—that the brakeman should be careful not to step in such a place.

With this experience of over a year as freight brakeman upon a long line of railroad with numerous switches and guard rails all unblocked, he came in the course of his employment to shift switches and uncouple cars upon the tracks of the defendant company with their frogs and guard rails similarly unblocked.   The use of these tracks by the plaintiff's employer for the purpose of taking on and setting off cars undoubtedly began as soon as trains began running on the defendant company's road, which was in the previous September.   The plaintiff therefore had worked upon the defendant company's tracks and switches at the junction for two months prior to his injury, though he says he does not remember of using this particular switch more than once before he was hurt.

Now, when on the day he was injured he went in between the cars of the moving train near this switch and walked along with the train to a point opposite the guard rail, could he rightfully or reasonably assume that the rail was blocked, and therefore rightfully dismiss all thought about it from his mind ?

We think not. We think, on the other hand, that the defendant company could rightfully assume he understood the situation, appreciated the obvious risk, and undertook to protect himself from it. As he almost daily passed Sherman Junction he saw the defendant company's railroad in process of construction. At the time of the injury the work was still going on. The blocking of guard rails and frogs was comparatively a new device which had not long been in use in this State at least. It was not in use at all upon the connecting road, the Bangor and Aroostook, and had never been seen or heard of by the plaintiff till after the injury. The time had not come for him to assume that it was in use upon this new incomplete road, and to dismiss all thought of the danger from his mind. Under all the circumstances he must be held to have assumed the risk of working about the unblocked guard rail, and if he thoughtlessly stepped into the flare of it while between moving cars the risk went against him and not against the company. A few cases will illustrate our reasoning.

In *Wood* v. *Locke,* 147 Mass. 604, (1888), the plaintiff, a brakeman, while coupling cars caught his foot in an unblocked frog and was injured. It was held that, having no reason to believe that the frog was blocked, the injury was one of which he had assumed the risk and hence he could not recover. In *Appel* v. *B. N. Y. & P. R. R. Co.,* 111 N. Y. 550, while the plaintiff's intestate, a switchman, was engaged in uncoupling cars his boot was caught in an unblocked frog and he was run over and killed. It was held that the risk was obvious and must have been known to the deceased, and hence was his risk. In *Mayes* v. *C. R. I. & P. R. R. Co.,* 63 Iowa, 563, the plaintiff's intestate had been a switchman or brakeman for six weeks, and was injured through the omission of the railroad company to place blocks between the rails and the guard rails at the switches. It was held that the defect, and

the danger were obvious, and that he should have guarded against them. In *Turner* v. *B. & M. Railroad*, 158 Mass. 261, cited by the plaintiff, it was in evidence that the defendant company had assumed the duty of blocking all its frogs and keeping them blocked. The plaintiff, therefore, could rightfully assume that the frog at the place where he was working at the time was blocked. In this case there is no evidence that the defendant company had assumed the duty of blocking its guard rail, and no evidence that would lead the plaintiff to suppose so.

*Motion sustained.*
*Verdict set aside.*