## Green *v.* American Car & Foundry Company.

[No. 20,338.   Filed June 10, 1904.]

**Master and Servant.**—*Factory Act.*—*Guarding Dangerous Machinery.*— Where a car foundry has a device for crushing old car wheels, formed by four upright posts set in a square ten feet, twenty-five feet high, inclined to the center at the top, the top constructed of a heavy frame of wood and iron, upon which is a pulley and wheels connected with chains and ropes, and one of the ropes, passing over a pulley, is attached to a 1,500-pound steel hammer, and another is attached to a machine on the floor and receives from it compressed air power which propels the wheel and pulley at the top, thus lifting the hammer, such device is a "machine" within the meaning of the factory act (§7087i Burns 1901, Acts 1899, p. 231, §9), and it is the duty of the employer to keep it properly guarded. *p. 139.*

**Same.**—Where the answers to interrogatories show: that defendant had a device for crushing old car wheels, formed by four upright posts set in a square ten feet, twenty-five feet high, inclined to the center at the top; the top made of a heavy frame of wood and iron, upon which was a pulley and wheels connected with chains and ropes; that one of the ropes, passing over a pulley, was attached to a steel hammer which was operated by compressed air; that when the hammer struck the car wheels, pieces weighing four or five pounds would sometimes fly out over the top of the casing to a distance of fifteen to twenty-five feet; that plaintiff had assisted in running the weight for a year and knew the danger, and had told the foreman that it was dangerous to run the machine with the top uncovered, and that he continued in the service after notice of the danger, this does not defeat the plaintiff's action, as the servant, under §7087i Burns 1901, does not assume the risk of dangers created by the violation of such law by the employer, nor can he excuse such non-compliance, and if injury occurs to the servant by reason of such violation, the master is liable. *pp. 139, 140.*

From Clark Circuit Court; *J. K. Marsh*, Judge.

Action by McCallin Green against the American Car & Foundry Company. General verdict for plaintiff for $525, together with answers to interrogatories. Defendant's motion for judgment *non obstante veredicto* sustained. Plaintiff appeals. Transferred from the Appellate Court under §1337u Burns 1901. *Reversed.*

*G. H. Voigt*, for appellant.
*M. Z. Stannard*, for appellee.

HADLEY, J.—Appellant sued the appellee to recover damages for personal injuries alleged to have been received by the negligence of the latter. Appellee is engaged in the manufacture of freight and passenger-cars, and, among many other machines and appliances, has a device for crushing old car wheels preparatory to melting and re-moulding, which device, or machine, is constructed as follows: There are four upright heavy timber posts set in a square of ten feet, twenty-five feet high, slightly inclined to the center point at the top. At the top is constructed a heavy frame of wood and iron, upon which is a heavy pulley and certain wheels, connected with chains and ropes, one of the latter, and which passes over the pulley, is attached to a 1,500-pound steel hammer, resting upon the center of the floor within said posts, and another is attached to a machine on the floor, and receives from it compressed air power, which propels the wheel and pulley at the top of said posts, and which, in turn, lifts the hammer to the top of the structure. Then, after a car wheel has been placed on the floor immediately under the hammer, the latter is disengaged, by jerking a rope, and let fall with great force upon the wheel, breaking and crushing the same. To prevent fragments of the broken wheel from being thrown off and about the building, the company had constructed about the bottom, of heavy boards, and from post to post, a guard or incasement eight feet high, but had not covered any part of the top, although it might have covered it fully except three feet square in the center for passage of the hammer without impairing the operating convenience or utility of the machine or device. In operating the drop, pieces of the broken wheel weighing from four to five pounds would now and then be thrown out over the top of the incasement to a distance of fifteen to twenty-five feet beyond. The plaintiff had been in the employ of the company for more than a year, had frequently operated the drop, and for several months had known that

it was liable to throw dangerous fragments of iron over the top of the incasement. He had also previously called the foreman's attention to the danger from the open top. On August 20, 1902, while the plaintiff was engaged in operating said machine, and having released the elevated hammer by jerking a rope, and while standing in the proper place for doing it, a heavy piece of iron was hurled out over the top of the incasement, which, in descending, struck the plaintiff on the head, inflicting the injuries of which he complains.

All the foregoing facts are alleged in the complaint, and the negligence charged in the first paragraph is the failure to put a top on the guard or incasement, and in the second paragraph, the failure to construct the incasement high enough. Answer, the general denial. Trial by jury, and with the general verdict for appellant the jury returned answers to interrogatories. The court sustained appellee's motion for judgment on the special findings, and the correctness of this ruling is the only question for decision.

The facts specially found by the jury, are these: When the descending hammer struck a car wheel, broken pieces thereof, weighing four or five pounds, sometimes flew out over the top of the casing to a distance of fifteen to twenty-five feet. The plaintiff had for several months assisted in operating the drop, and knew that the incasement was not covered, and that the hammer was liable to throw out over the top such pieces of iron as caused his injury, and, some time before he was hurt, informed the foreman that it was dangerous to operate the machine without a cover over the top. The sum of these things is that the falling drop was liable to cast harmful pieces of iron over the top of the protecting walls, and appellant continued in the employment after he had notice of the danger.

Appellant contends that the court erred in holding that these special facts overthrew the general verdict, which was in his favor, for two reasons: (1) Because a continu-

ance in the employment after notice of the danger was not contributory negligence, if an ordinarily prudent person, in his place, would have done the same thing, and that being a question of fact, was determined by the jury in his favor; and (2) the doctrine of assumed risk has no application where the negligence counted on consists of the violation of a statutory duty. Without stopping to inquire into the soundness of appellant's first reason, we will proceed to the second, as the one which leads to the core of the question for decision.

It is clear that appellant does not base the action upon his employer's neglect to perform a common law duty, since he wholly fails to negative knowledge of the danger. It is, however, now the settled law of this State that the legislature may, in its discretion, with a view to the greater safety and protection of laborers, set up definite standards of duty to be observed by employers in providing working places for their employes, which are uncontrolled by the rules of the common law. *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319; *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 58 L. R. A. 944. The effect of these cases is, when the legislature has prescribed specific measures for the proper fitting of a working place, it is a duty which the employer owes to his employe to provide the very means pointed out. Nothing different will exonerate, however better it may seem to him. The law is predicated upon the interest the State has in preserving the health, bodies, and lives of its citizens. Hence the workman has no power, either to excuse a compliance with the statute, or bind himself with an agreement to assume the risk of noncompliance. See *Davis Coal Co.* v. *Polland, supra.*

It is not claimed by appellee that appellant was wanting in due care at the time of his injury, further than is shown generally by his continuance in the employment after knowledge of the hazard to be apprehended from the drop.

The question is therefore narrowed to these two propositions:  (1) Was the "wheel drop," in and as a part of appellee's manufacturing establishment, a machine within the meaning of §7087i Burns 1901?  And (2), if yes, was it properly guarded?

1.  The statute referred to is section nine of the act of 1899 (Acts 1899, p. 231), the title to which, in part, is in these words:  "An act concerning labor, and providing means for protecting the liberty, safety and health of laborers, providing for its enforcement," etc.  Section nine, so far as relates to our subject, provides that, "all vats, pans, saws, planers, cogs, gearing, belting, shafting, set screws and machinery of every description therein [manufacturing, etc., establishments] shall be properly guarded, and no person shall remove or make ineffective any safeguard around or attached to any planer, saw, belting, shafting or other machinery,  *  *  *  while the same is in use, unless for the purpose of immediately making repairs thereto, and all such safeguards shall be promptly replaced."  The federal Supreme Court in *Corning* v. *Burden* (1853), 15 How. 252, 14 L. Ed. 683, has defined a "machine" as follows:  "The term machine includes every mechanical device or combination of mechanical powers and devices to perform some function and produce a certain effect or result."  Accepting this as a correct definition of a machine, or machinery, and the device, or combination of devices, for crushing car wheels, described in the complaint, comes so clearly within the definition as to forbid argument.  It follows that appellee, being a manufacturer, and using said machine in its manufacturing establishment, owed to its workmen the certain and fixed duty of properly guarding it.  The nonfulfillment of this duty involves a violation of the statute, and can not therefore be made the subject of contract, by which the duty may be laid aside, changed, or modified, or the risk of nonperformance assumed by the operating employe.

2. The particular manner of guarding this or other machines is not described by the statute, and hence what shall constitute a proper guarding is a question of fact to be determined from the character of the machine and nature of the peril to be avoided. It was evidently the intention of the lawmakers to require employers to protect their workmen, by appropriate and efficient structures, against all unnecessary dangers, or such as may be reasonably removed or diminished without impairing the usefulness or headway of the machine or operative. In this instance it is shown that, in reaching the result the machine was designed to accomplish, a natural and a reasonably expected effect from the fall of the heavy hammer upon an old car wheel was to cause fragments of the broken wheel to be thrown off with a force and in a manner dangerous to persons engaged about it. This appellee was bound to know, and did know, as averred, and was required by the statute to erect about the machine such a structure as would reasonably appear most effective in arresting the flying fragments without impairing the efficiency of the machine.

It is alleged in the complaint that dangerous pieces of iron, and the one that injured the plaintiff, were thrown out over the top of the guard, which was but eight feet high and uncovered. And that the same might have been covered, except a space three feet square in the center for passage of the dropping hammer, without affecting the usefulness or convenience in operating the machine, and the danger to operatives thereby removed, or greatly diminished. These averments presented the question as to whether the machine was properly guarded, and we must assume, in support of the general verdict, that the jury determined it in the negative. We must likewise assume, and for a like purpose, that, upon all the proved facts appellant was free from legal fault, and that his injuries resulted in the manner alleged in the complaint.

The appeal must be sustained. Judgment reversed, with

instructions to overrule appellee's motion for judgment in its favor on the answers to interrogatories notwithstanding the general verdict, and for further proceedings not inconsistent with this opinion.

The death of appellant since the submission of this appeal having been suggested, it is ordered that the judgment of reversal shall bear date as of the day of submission.