### INLAND STEEL CO. v. KACHWINSKI.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1907.)

#### No. 1,306.

1. MASTER AND SERVANT—INDIANA FACTORY ACT—DUTY OF EMPLOYER TO GUARD MACHINERY.

Section 9 of the Indiana factory act (Burns' Ann. St. Ind. 1901, § 7087i), which provides that "all vats, pans, saws, planers, cogs, gearing, belting, shafting, set screws and machinery of every description therein shall be properly guarded," as construed by the Supreme Court of the state, applies to any kind of machinery which is alleged and proved to be of the same kind as a vat, pan, saw, etc., with respect to danger of operation and practicability of erecting guards.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 228–231.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

2. SAME—ACTION FOR INJURY OF SERVANT—DEFENSE OF ASSUMPTION OF RISK.

Under the Indiana factory act (Burns' Ann. St. Ind. 1901, § 7087i), which requires owners to guard machinery, etc., as construed by the Supreme Court of the state, an employer cannot set up the defense of assumption

of risk to an action to recover for a personal injury resulting from the failure of such employer to obey the law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 545.]

In Error to the Circuit Court of the United States for the District of Indiana.

Defendant in error, plaintiff below, recovered a judgment on account of personal injuries.

The alleged negligence was defendant's failure to comply with section 9 of the Indiana factory act (section 7087i, Burns' Ann. St. 1901), which reads as follows: "Sec. 9. It shall be the duty of the owner of. any aforesaid establishment, or his agent, superintendent or other person in charge of the same, to furnish and supply, or cause to be furnished and supplied therein, in the discretion of the chief inspector, where machinery is used, belt shifters or other safe mechanical contrivances for the purpose of throwing on or off belts or pulleys; and whenever possible, machinery therein shall be provided with loose pulleys; all vats, pans, saws, planers, cogs, gearing, belting, shafting, set screws and machinery of every description therein shall be properly guarded, and no person shall remove or make ineffective any safeguard around or at-. tached to any planer, saw, belting, shafting or other machinery, or around any vat or pan, while the same is in use, unless for the purpose of immediately making repairs thereto, and all such safeguards shall be promptly replaced. By attaching thereto a notice to that effect, the use of any machinery may be prohibited by the chief inspector should such machinery be regarded as dangerous. Such notice must be signed. by the chief inspector, and shall only be removed after required safeguards are provided and the unsafe and dangerous machine shall not be used in the meantime. Exhaust fans of sufficient power shall be provided for the purpose of carrying off dust from emery wheels and grindstones and dust-creating machinery from establishments where used. No person under sixteen years of age, and no female under eighteen years of age, shall be allowed to clean machinery while in motion."

Plaintiff was a workman at defendant's plant, engaged in breaking scrap iron and steel into smaller bits. By means of a fixed derrick a large steel ball was raised to a considerable height and allowed to fall upon the scrap that had been piled beneath. About 40 feet from the drop was a small shed of inch boards. Into this plaintiff was accustomed to retire to pull the rope that released the raised ball. Large pieces of iron frequently were hurled farther than the shed. Prior to the day of the injury the shed had been penetrated. by these missiles. Plaintiff had been at this work for three or four months, and was familiar with the conditions. The injuries complained of were caused by a large piece of iron bursting through the shed and striking plaintiff. The complaint alleged that it was practicable to afford protection either by inclosing the drop or by building the shed of heavy materials.

Under the assignments of error defendant presents these questions: Was. there sufficient evidence in support of the allegation that it was practicable to inclose the drop? Does the Indiana factory act apply? Does that act cut off the defense of assumption of risk?

Frank M. Cox, for plaintiff in error.
F. N. Gairt, for defendant in error.

Before GROSSCUP, BAKER and SEAMAN, Circuit Judges.

BAKER, Circuit Judge (after stating the facts). 1. As the act, if applicable, did not require defendant to construct a guard that would seriously impair the usefulness of the drop, plaintiff was obliged to plead and prove that it was practicable for defendant to afford him protection. But, if it were conceded that defendant's evidence concerning the practicability of inclosing the drop so far overbore plaintiff's

that no question for the jury was left, the case would be unaffected, because there was ample proof that it was entirely feasible to build a safe shed, and this issue was fully presented to the jury in the court's instructions.

2. The question is whether the drop is included in the provision which requires the guarding of "all vats, pans, saws, planers, cogs, gearing, belting, shafting, set screws, and machinery of every description." Undoubtedly this drop comes within the proper definition of a machine. And, in Green v. American Car & Foundry Co., 163 Ind. 135, 71 N. E. 268, a drop of this character was held to be within the statute. Inasmuch as the construction adopted by the Supreme Court of Indiana is of binding force here, defendant concedes that the question now under consideration is at an end, unless the Green Case has been invalidated by later decisions. Two are cited as having that effect. Laporte Carriage Co. v. Sullender, 165 Ind. 290, 75 N. E. 277, and National Fire Proofing Co. v. Roper (Ind. App.) 77 N. E. 370. Since it is the duty of the Appellate Court of Indiana to follow, and not to subvert, the Supreme Court's interpretation of the statute, the Roper Case may be passed on the assumption that the court did not undertake to exceed its authority. Is the Green Case overthrown by the Sullender? Certainly not by any expression of disapproval. The Sullender Case rests on questions of pleading. The first paragraph of complaint was held to state no cause of action either under the statute or at common law. In the second paragraph the alleged negligence consisted in leaving unguarded an emery belt which was used as a metal polisher. The emery belt was a polishing machine, and did not come within the designation of "belting" in the act. Attention was called to the fact that the pleading did not show whether the operation of the machine was attended with danger, nor whether it was practicable to construct guards without rendering the machine useless for the purpose for which it was intended. Therefore, in the absence of such averments, the emery belt could not properly be included in the general phrase, "and machinery of every description," which by the rule of ejusdem generis must be limited to machinery of the same nature as that of the appliances specifically enumerated. Now, in our view of the Sullender Case, the Supreme Court of Indiana did not mean, as defendant seems to insist, that a vat or a pan is a machine, or that no recovery could be had for leaving unguarded a machine unless that machine was some sort of a vat, or some sort of a pan, and so on. If that were intended, it would have been idle to reverse the case with leave to Sullender to supply the averments respecting the danger of operation and the practicability of furnishing guards. In our judgment, therefore, the Sullender Case does not antagonize the Green Case, but accords with it in sustaining the view that "machinery of every description" may be brought within the statute by averring and proving that the machine in question is of the same kind as an unguarded vat, pan, saw, etc., with respect to danger of operation and practicability of erecting guards.

3. Concerning assumption of risk, the Supreme Court of Indiana, in considering the effect of the mining act, which is similar to the factory act, made the following pronouncement:

·"Freedom of contract should not be lightly interfered with. As a general rule, the right of contracting as one sees fit stands untrammeled.· But the state has power to restrict this right in the interest of public health, morals, and the like. When, in the present case, it is pointed out that the Legislature has failed in terms to deny the employé's right to assume the risks from his employer's disregard of the statute, the question is not ended.. If the Legislature has clearly expressed the public policy of the state on a matter within its right to speak upon authoritatively, and if that public policy would be subverted by allowing the employé to waive in advance his statutory protection, the contract is void as unmistakably as if the statute in direct words forbade the making of it. * * * The purpose of this statute to promote the safety of miners being clear, and the right of the Legislature to pass it being unquestionable, the court should not declare it a dead letter. If the employer may avail himself of the defense that the employé agreed in advance that the ·statute should be disregarded, the court would be measuring the rights of the persons whom the lawmakers intended to protect by the common-law standard ·of the reasonably prudent person, and not by the definite standard set up by the Legislature. This would be practically a judicial repeal of the act. It is no hardship to the employer to disallow him a defense based on an agreement that he should violate a specific statutory duty. His sure protection lies in obedience to the law." Davis Coal Co. v. Polland, 158 Ind. 607, 62 N. E. 492, 92 Am. St. Rep. 319.·

And the same doctrine was applied to the factory act in Monteith v. Kokomo, etc., Co., 159 Ind. 149, 64 N. E. 610, 58 L. R. A. 944.

The judgment is:

Affirmed.