## WELSH v. BARBER ASPHALT PAVING CO.†

(Circuit Court of Appeals, Ninth Circuit. February 1, 1909.)

### No. 1,629.

1. MASTER AND SERVANT (§ 204*)—ACTION FOR INJURY TO SERVANT—ASSUMPTION OF RISK—VIOLATION OF STATUTE BY EMPLOYER.

Under Act Or. Feb. 25, 1907 (Laws 1907, p. 302), which requires every owner of a factory, mill, or workshop to provide reasonable safeguards for all machinery which it is practicable to guard under penalty for failure to comply with such requirement, and also gives a right of action to recover damages for any injury to an employé of which such failure is the proximate cause, an employer in such an action cannot invoke the defense of assumption of risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544, 545; Dec. Dig. § 204.*]

2. STATUTES (§ 226*)—CONSTRUCTION—STATUTE ADOPTED FROM OTHER STATE.

Act Or. Feb. 25, 1907 (Laws 1907, p. 302), requiring owners of mills and factories to safeguard their machinery, having been adopted from a statute of Washington, the construction previously placed upon such statute by the Supreme Court of Washington was also adopted.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 307; Dec. Dig. § 226.*

Construction of statutes, state laws as rules of decision in federal courts, see note to Wilson v. Perrin, 11 C. C. A. 72.]

3. COURTS (§ 372*)—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

The construction and effect of a state statute requiring owners of mills and factories to safeguard their machinery is not a matter of general, but of local, law, and the decisions of the highest court of the state thereon are binding on the federal courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 977; Dec. Dig. § 372.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

4. MASTER AND SERVANT (§ 252*)—ACTION FOR INJURY TO SERVANT—NOTICE AS CONDITION PRECEDENT.

Under Act Or. Feb. 25, 1907 (Laws 1907, p. 302), which gives a right of action for injury to an employé resulting from a failure of the employer to safeguard machinery as therein required, but provides that no such action shall be maintained unless notice of the time, place, and cause of injury is given to the employer within six months and the action is commenced within one year, the commencement of the action within six months and the filing of a complaint setting out the facts dispenses with the necessity of any other notice.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

167 F.—30          † Rehearing denied February 23, 1909.

5. Action (§ 11*)—Conditions Precedent—Waiver.
		The giving of a notice required by statute as a condition precedent to
	the maintaining of an action is waived by the failure of the defendant to
	object to the want of notice by demurrer, answer, or otherwise.
		[Ed. Note.—For other cases, see Action, Dec. Dig. § 11.*]

In Error to the Circuit Court of the United States for the District of Oregon.

Upon the trial in the court below, upon a complaint alleging that the plaintiff's intestate was killed by an accident while employed in operating the hoisting works of the defendant in error, and alleging that the accident resulted from the negligence of the defendant in error, first, in allowing a friction clutch to be and remain defective, and, second, in allowing a set screw to extend beyond the surface of a set collar, without being guarded as required by law, the jury returned a verdict for the defendant in error. The law so referred to was adopted by the Legislature of Oregon on February 25, 1907 (Laws 1907, p. 302). It requires every person, firm, corporation, or association operating a factory, mill, or workshop where machinery is used to provide reasonable safeguards, among other things, for set screws and all machinery "which it is practicable to guard," and prohibits the use of any machine not safeguarded. It imposes a penalty for failure to comply with said provisions, and provides that any person, firm, or corporation who violates the same shall, if such failure or omission be the proximate cause of any injury to an employé, be liable in damages to any employé who sustains injuries by reason thereof, but limits the amount to be recovered to $7,500. While attempting to operate the friction clutch, the plaintiff's intestate became entangled in the set screw which extended beyond the surface of the collar, and, by the rapid rotation of the shaft, he received mortal injuries. It was proven that the set screw was not guarded or boxed as required by the statute. The court instructed the jury that the ordinary doctrine of assumption of risk applied to the case, notwithstanding the statute, and that the statute required no different consideration of the issues than would be required had it not been adopted. To these instructions the plaintiff in error excepted.

Henry E. McGinn, for plaintiff in error.
Blattner & Chester, Wm. D. Fenton, F. S. Senn, and L. B. Da Ponte, for defendant in error.
Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). A statute of Oregon required that reasonable safeguards be provided for set screws in all factories, mills, and shops where machinery is used. There was evidence in the case that the proximate cause of the death of the plaintiff in error's intestate was an unguarded set screw on a revolving shaft in a factory. Upon the question whether the defense of assumption of risk may be invoked against an employé who has notice of his master's failure to perform a statutory duty for his protection, the decisions of the state courts are contradictory, and are nearly evenly divided. In Massachusetts, New York, Minnesota, Maine, Iowa, Alabama, Wisconsin, and Rhode Island, it is held that the defense is available. O'Maley v. South Boston Gaslight Co., 158 Mass. 135, 32 N. E. 1119, 47 L. R. A. 161; Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986, 32 L. R. A. 367; Camp v. Chicago Great Western R. Co., 124 Iowa, 238, 99 N. W. 735; Swenson v. Chicago & B. Mfg. Co., 91 Minn. 509, 98 N. W. 645; Powell v. Ashland

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Iron & Steel Co., 98 Wis. 35, 73 N. W. 573; Langlois v. Dunne Worsted Mills, 25 R. I. 645, 57 Atl. 910; Birmingham R. & Elec. Co. v. Allen, 99 Ala. 359, 13 South. 8, 20 L. R. A. 457; Gillin, etc., v. R. Co., 93 Me. 80, 44 Atl. 361. The reverse has been held in Indiana, Illinois, Missouri, Vermont, Michigan, North Carolina, Washington, Louisiana, and Texas. Spring Valley Coal Co. v. Patting 210 Ill. 342, 71 N. E. 371; Island Coal Co. v. Swaggerty, 159 Ind. 664, 62 N. E. 1103, 65 N. E. 1026; Green v. American Car & Foundry Co., 163 Ind. 135, 71 N. E. 268; Murphy v. Grand Rapids Veneer Works, 142 Mich. 677, 106 N. W. 211; Durant v. Lexington Coal Min. Co., 97 Mo. 62, 10 S. W. 484; Kilpatrick v. Grand Trunk R. Co., 74 Vt. 288, 52 Atl. 531, 93 Am. St. Rep. 887; Green v. Western American Co., 30 Wash. 87, 70 Pac. 310; Hall v. West & S. Mill. Co., 39 Wash. 447, 81 Pac. 915; Hailey v. Texas R. Co., 113 La. 533, 37 South. 131; Elmore v. Seaboard Air Line R. Co., 132 N. C. 865, 44 S. E. 620; Missouri, etc., R. Co. v. Goss, 31 Tex. Civ. App. 300, 72 S. W. 94.

There is a similar division of opinion in the federal courts. In the Sixth Circuit, in the leading case of Narramore v. Cleveland, C., C. & St. L. R. Co., 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68, it was held that the doctrine of the assumption of risk by a servant rests, either expressly or by implication, in the contract of employment, and that no right of action accrues to the servant for an injury due to such risk, for the reason that under the contract, the master has violated no legal duty in failing to protect the servant from dangers, the risk of which he agreed to assume; but that where a statute intervenes to protect the servant by requiring the master to perform certain designated acts, if the servant impliedly waives a compliance with the statute and agrees to assume the risk by continuing in the service without complaint, a court will not recognize or enforce such an agreement, and that to permit the master to avail himself of such assumption of risk by his employé is in effect to nullify the statute and is against public policy. In the Eighth Circuit, on the other hand, the reverse was held in St. Louis Cordage Co. v. Miller, 126 Fed. 195, 61 C. C. A. 477, 63 L. R. A. 551 (from which Judge Thayer dissented); Glenmont Lumber Co. v. Roy, 126 Fed. 524, 61 C. C. A. 506; Federal Lead Co. v. Swyers (C. C. A.) 161 Fed. 687; Denver & Rio Grande Ry. Co. v. Norgate, 141 Fed. 247, 72 C. C. A. 365, 6 L. R. A. (N. S.) 981. In the Seventh Circuit, in Chicago-Coulterville Coal Co. v. Fidelity & Casualty Co. (C. C.) 130 Fed. 957, Philips, District Judge, in a case arising in Illinois, held that the defense of assumption of risk was taken away by the Illinois statutes as construed by the decisions of that state, and, while not expressly declaring that the federal court was bound by such construction of the state statutes, the court said that its conclusion was in accordance with the established construction of the statute by the Supreme Court of Illinois, which, it was said, "had been enacted in compliance with the declared public policy of the state as defined in its fundamental law." In Inland Steel Co. v. Kachwinski, 151 Fed. 219; 80 C. C. A. 571, the Circuit Court of Appeals for the Seventh Circuit said that the construction of the statute adopted by the Supreme Court of

Indiana was of binding force upon a federal court in a case arising thereunder, and, without further discussion of the question than to ascertain what that construction was, held that the employer could not set up the defense of assumption of risk to an action for personal injury resulting from his failure to obey the law. In E. S. Higgins Carpet Co. v. O'Keefe, 79 Fed. 900, 25 C. C. A. 220, the Circuit Court of Appeals for the Second Circuit followed the decisions of the Supreme Court of New York, and said:

"As construed by the highest courts of the state, the statute does not impose any liability upon an employer for injuries received by a minor in his service in consequence of the fault of the employé, or arising from the obvious risks of the service he has undertaken to perform."

We find in the discussion of this question in the American decisions some diversity of opinion as to the purport and meaning of some of the English cases construing and applying the Employers' Liability Act of 1880. The value of those cases as precedents on the question here before us is complicated by some obscurity in the reasoning of certain of the opinions, and by the fact that the English statute differs in important features from those of most of the American states, and particularly from that of Oregon. One of the differences is that the English statute deprives the servant of the right to maintain an action where he has discovered a defect and failed to notify the master. The opinions of the English judges, as we understand them, while they are not harmonious as to some of the questions arising under the act, uniformly sustain the proposition that assumption of risk is taken away in every case where the injury results from the master's failure to do a specific act required by law for the workman's protection. In Weblin v. Ballard, 17 Q. B. Div. 122, it was held that an employer, when sued by a workman for personal injury caused by failure to comply with the act, cannot avail himself of the defense that the workman had contracted to take upon himself the risks incident to the employment. Thomas v. Quartermaine, 18 Q. B. Div. 685, decided by the Court of Appeal a year later than Weblin v. Ballard, was a case in which the alleged negligence which caused the injury was the failure of the employer to properly fence a vat. The particular statutory provision under consideration was section 2, subsec. 1, providing that the workman cannot maintain his action when arising from a defect in the ways or plant, unless the defect arose from, or had not been discovered or remedied owing to, the negligence of the employer or of some person in his service as therein mentioned. It was this section which the court construed, and not a provision expressly requiring that a vat, such as that which was maintained by the defendant in that case, should be fenced or guarded. Another of the provisions of the act was that, in an action to recover for personal injury to a workman, he should have the same rights of compensation and remedies against the employer as if he had not been a workman in the service of the employer nor engaged in his work. In view of that provision, Lord Esher, Master of the Rolls, was of the opinion that the act took away from the master the defense of the assumption of risk by the work-

man in all cases where the injury resulted from the negligence of the master, whether there was or was not a violation by the master of a specific precautionary provision enacted for the protection of the workman. This view was not taken by the two Lords Justices Bowen and Fry, who were of the opinion that, in the class of cases such as that under consideration, the defense arising from the maxim, "Volenti non fit injuria," had not been affected by the act. They also held that, in the case as presented, there was no evidence of negligence arising from any breach of duty on the part of the defendant toward the plaintiff. Bowen, L. J., was of the opinion that the object of the clause of the statute which deprives the servant of the right to maintain an action where he has discovered a defect and failed to notify the master was to limit the employer's liability, not to enlarge it. Incidentally, both the Lords Justices expressed their opinion that the defense of assumption of risk was taken away in a case where the injured person had a statutory right to specific protection, "as where an act of Parliament requires machinery to be fenced." In Baddeley v. Earl Granville, 19 Q. B. Div. 423, in a case before the Queen's Bench Division, the question was the liability of the defendant for the death of the plaintiff's husband, who was killed, in coming out of a mine at night, by an accident resulting from the absence of a banksman expressly required by law to be present to give signals to lower the cage. Wills, J., in referring to the decision in Thomas v. Quartermaine, observed that, while the Master of the Rolls expressed a different opinion in that case, "both the Lords Justices thought that the maxim, 'Volenti non fit injuria,' would not apply at all where the injury arose from a direct breach by the defendant of a statutory obligation," and remarked:

"But it seems to me that if the supposed agreement between the deceased and the defendant, in consequence of which the principle of volenti non fit injuria is sought to be applied, comes to this, that the master employs the servant on the terms that the latter shall waive the breach by the master of an obligation imposed on him by statute, and shall connive at his disregard of the statutory obligation imposed on him for the benefit of others, as well as of himself, such an agreement would be in violation of public policy and ought not to be listened to."

Grantham, J., was of the same opinion, and held that, where there was a distinct breach of a statutory obligation, the case of Thomas v. Quartermaine was not an authority, and, referring to the latter case, said:

"The application of that decision seems to me to be intentionally limited by the court to the case before it. If that is so, the Lords Justices agree with the Master of the Rolls that the defendant would be liable in such a case as the present."

The decisions in Smith v. Baker & Sons, 1 App. Cas. 325, Osburn v. London & Northwestern Ry. Co., 21 Q. B. Div. 220, and Walsh v. Whiteley, Id. 371, add nothing material to the decisions above noted.

Upon a careful consideration of the Oregon statute and its purpose of protection to a class peculiarly subject to abuse and oppression, we incline toward the views expressed in the Narramore decision. In

that case the court, having reached the conclusion that the doctrine of assumption of risk rests upon contract, express or implied, said:

"The only question remaining is whether the courts will enforce or recognize, as against a servant, an agreement, express or implied on his part, to waive the performance of a statutory duty of the master imposed for the protection of the servant, and in the interest of the public, and enforceable by criminal prosecution. We do not think they will. To do so would be to nullify the object of the statute. The only ground for passing such a statute is found in the inequality of terms upon which the railway company and its servants deal in regard to the dangers of their employment. The manifest legislative purpose was to protect the servant by positive law, because he had not previously shown himself capable of protecting himself by contract; and it would entirely defeat this purpose thus to permit the servant 'to contract the master out' of the statute. It would certainly be novel for a court to recognize as valid an agreement between two persons that one should violate a criminal statute; and yet, if the assumption of risk is the term of a contract, then the application of it in the case at bar is to do just that."

The doctrine of that decision, that the assumption of the known risk of his employment by an employé is to be considered from the view point of contract, express or implied, has been questioned and disputed in later decisions, notably in Denver & R. G. Ry. Co. v. Norgate, in which it was said that the doctrine has no basis in the contract, even by implication, but that it is founded on the status assumed by master and servant, and upon the maxim, "Volenti non fit injuria." We find high authority to the contrary. In Yarmouth v. France, 19 Q. B. Div. 647, Lord Esher said:

"Under the old law it would have been said: 'You (the servant) have entered into or have continued in this employment where this thing of which you complain is open and palpable, and, therefore, it is an implied condition of your contract of service that you take upon yourself the risk of accidents therefrom, and consequently you have no remedy against your employer.' As between master and servant, that was the way the immunity from liability was always stated. The maxim, 'Volenti non fit injuria,' was not wanted as between master and servant. It was only wanted, if at all, where no such relation as that of master and servant existed."

In Smith v. Baker & Sons, Lord Watson said:

"In its application to questions between the employer and the employed, the maxim as now used generally imports that the workman had either expressly or by implication agreed to take upon himself the risks attendant upon the particular work which he was engaged to perform, and from which he has suffered injury."

In Hough v. Railroad Co., 100 U. S. 217, 25 L. Ed. 612, Mr. Justice Harlan said:

"It is implied in the contract between the parties that the servant risks the dangers which ordinarily attend or are incident to the business in which he voluntarily engages for compensation."

In Tuttle v. Milwaukee Railway, 122 U. S. 196, 7 Sup. Ct. 1168, 30 L. Ed. 1114, Mr. Justice Bradley quoted and approved the language of Judge Cooley as follows:

"As the servant then knows that he will be exposed to the incidental risk, he must be supposed to have contracted that as between himself and the master he will run this risk."

In Railway Co. v. Bancord, 66 Kan. 81–88, 71 Pac. 253, 255, the court said:

"Reduced to its last analysis, the doctrine of assumed risk must rest for its support upon the express or implied agreement of the employé that, knowing the danger to which he is exposed, he agrees to assume all the responsibility for resulting injury."

But the maxim, "Volenti non fit injuria," obviously expresses but a half truth when applied to the relation of master and servant and the assumption of risk by the latter. An employé who remains in the employment of his master in the face of well-known defects in his master's machinery and the risks incident to the use thereof, it is reasonable to say, is seldom volens in the sense that he willingly assumes the risk. He may, and often does, remain in the service for the reason that he is unable to find, or is unfitted for, other employment. In such a case it is idle to say that he is free to leave his master's service and seek employment elsewhere. He is not free. He remains, trusting that he may have the good fortune to escape injury from the well-known risks. It is at this point that the Legislature intervenes, and, by a humane statute founded on principles of public policy, undertakes to protect him against these risks, and makes the reasonable requirement that the master shall minimize the risks by adopting precautions which, while they impose no substantial burden upon him, greatly lessen the chances of personal injury to his employés. In Thrussel v. Handyside & Company, 20 Q. B. Div. 364, the court said:

"It cannot be said where a man is lawfully engaged in work, and is in danger of dismissal if he leaves his work, that he willfully incurs any risk which he may encounter in the course of such work. * * * If the plaintiff could have gone away from the dangerous place without incurring the risk of losing his means of livelihood, the case might have been different; but he was compelled to be there; his poverty, not his will, consented to incur the danger."

But we do not deem it essential to the construction of the Oregon statute to decide whether the common-law doctrine of assumption of risk is implied in the contract of employment between the master and servant, or rests in the maxim, "Volenti non fit injuria." If the former is the true theory, the statute enacted in the exercise of the police power of the state to afford needed protection to a large class of its inhabitants, and providing a penalty for its violation, takes from the employé the right to contract to waive the performance of the duty so imposed. To hold that he could do so would be to nullify the statute and thwart its purpose. On the other hand, if the latter is the true theory, we are confronted with the fact that the statute, in addition to denouncing a penalty for violation of the statute, expressly creates a cause of action on behalf of those who are injured through its violation. There would be no occasion to create such cause of action if it were not the legislative intention thereby expressed to deprive the master of the defense of assumption of risk when injury occurs as the result of a violation of the statute. But there is other ground for this construction of the statute.

The Oregon statute, it is admitted, was adopted from the statute

of Washington, which is substantially the same, save that the latter does not contain the express provision granting a civil cause of action to the injured employé. When it was adopted in Oregon, the Supreme Court of the state of Washington had already given the statute the construction which we have given it. The construction so settled by the highest court of the state from which the statute was taken became a part of the law when it was adopted in Oregon, and is, we think, binding upon a federal court. The question was, purely one of the construction of a state statute, and its effect upon a common-law rule. This was the view taken in Inland Steel Co. v. Kachwinski, 151 Fed. 219, 80 C. C. A. 577, and E. S. Higgins Carpet Co. v. O'Keefe, 79 Fed. 900, 25 C. C. A. 220. We are unable to agree, as it was assumed in St. Louis Cordage Co. v. Miller, 126 Fed. 495, 61 C. C. A. 477, 63 L. R. A. 551, that the question is one of general law, to be determined upon general principles, and not one upon which the federal courts are required to follow the decisions of the highest court of the state in which the action arises.

The defendant in error contends that the present action cannot be deemed to have been brought under the statute, for the reason that no notice was given as required by the statute. The statute provides:

"No action for the recovery of compensation of injury under this act shall be maintained unless notice of the time, place and cause of injury is given to the employer within six months, and the action is commenced within one year from the occurrence of the accident causing the injury."

The accident occurred on November 7, 1907, and the action was begun on January 29, 1908. The complaint contained all the requisites of a notice under the statute. The obvious and sole purpose of requiring such a notice is to afford the defendant timely opportunity to preserve evidence for his defense. The complaint filed within three months after the accident answered every purpose of such a notice, and we think it would be a refinement of technicality to hold that it did not dispense with the necessity of other notice. But conceding that notice was necessary, its necessity was dispensed with in this case, for it was waived by the defendant in error by its failure to object by demurrer, answer, or otherwise in the court below to the want of notice. We are referred to the case of Johnson v. Roach, 83 App. Div. 351, 82 N. Y. Supp. 203, where it was held, under the New York statute, that the giving of the notice is a condition precedent to the maintenance of the action, and that it is necessary not only to allege notice in the complaint, but to prove it on the trial, and that the necessity of notice is not waived by the defendant in going to trial without raising an objection on that ground. To that doctrine we are unable to assent.

The judgment is reversed, and the cause is remanded for a new trial.